STATE of Missouri, Respondent,

v.

James Robert HAYES, Sr., Appellant.

No. WD 55772.

Missouri Court of Appeals, Western District.

June 13, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2000.

Application for Transfer Denied Aug. 29, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Theodore M. Kranitz, Hugh D. Kranitz, St. Joseph, for appellant.

Before: ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.

**VICTOR C. HOWARD, Judge.**

James Robert Hayes, Sr., appeals from his convictions of involuntary manslaughter and armed criminal action. Hayes raises the following thirteen points on appeal: 1) there was no substantial evidence to support the guilty verdict; 2) the jury instruction and verdict on involuntary manslaughter concerned an uncharged crime; 3) the State improperly commented on his refusal to testify against or incriminate himself; 4) the court improperly prevented him from calling a witness to explain the circumstances of his supposed refusal to testify against or incriminate himself; 5) the court improperly refused to let him view Tony Coone's juvenile record; 6) the jury instruction on self-defense erroneously allowed the jury to consider whether he was the initial aggressor; 7) the jury instruction on involuntary manslaughter should have included a cross-reference to the self-defense instruction; 8) the court erroneously admitted testimony about a conversation he had with a witness concerning trouble he was having with a neighbor; 9) the court erroneously admitted expert testimony concerning his wounds; 10) the court erroneously allowed rebuttal testimony on a subject not broached in cross-examination; 11) the court erroneously allowed the State to comment on its own witnesses' lack of credibility in closing argument; 12) the court erroneously admitted testimony from Coone's girlfriend concerning a conversation she had with Coone at the hospital; and 13) the court erroneously allowed the State to argue, in its closing argument, that he and other defense witnesses had lied in their testimony, and to remark about what would happen if the jury acquitted him.

We reverse and remand.

### Facts

On June 3, 1997, James Robert Hayes, Sr., and Tony Coone were living in the same neighborhood. Hayes and Coone did not get along, and they had had several previous confrontations. That afternoon, Coone was lying in the street outside his house rotating the tires on his Chevy Blazer. Hayes' truck was parked on the other side of the street. Hayes pulled out of his parking spot and drove his truck alongside where Coone was working on his vehicle.

What happened next is disputed. Hayes testified at trial that as he pulled even with Coone's Blazer, the window and the door of his truck were struck. Hayes testified that he slammed on the brake and inadvertently killed the engine of his truck. He said that when he turned around, Coone grabbed his left arm or his shoulder and swung a hammer through the window. Hayes said he got a hold of the hammer and leaned over in the seat to pull away

from Coone. Hayes said that the hammer caught in his shirt momentarily, or he heard the shirt rip. He said that he kept holding on to the hammer and he jerked up in the seat and his left shoulder and head struck the top part of the truck. He said he still had a hold of the hammer and Coone was holding the hammer with his right hand. Coone said, "I'm going to kill you, you son of a bitch. I'm going to kill you." Hayes said that next he tried to push the hammer forward. Coone was jabbing him in the face with the hammer. Hayes testified that he was up "kind of in the corner of the truck." Hayes said that he managed to push the hammer forward and it lodged somewhere momentarily. He then reached into the pocket on the side of the truck's door and pulled out his revolver, laid it on the seat, unsnapped it, slid it out, and stuck it over his shoulder and pulled the trigger. He claims he did not look in Coone's direction, and that he was just trying to get Coone off him.

Hayes testified that he remembers nothing after the shooting other than being near the tailgate of the truck and seeing his wife coming toward him from a distance of about ten or fifteen feet away. He told her that he was all right and that someone else should pick up their granddaughter from school.

Jill Voltmer, a detective with the St. Joseph police department, testified that when she questioned Hayes at the hospital, "[o]ne of the first things he said to us was: I did not run his legs over." Voltmer said that Hayes told her "that Coone was all over him and he just lost it." Voltmer testified that Hayes complained of pain to his left arm when she first spoke to him at the hospital, but he later complained of pain to his right arm.

Hayes made a statement to the police on June 4, 1997. In that statement, Hayes said that as he pulled beside Coone's truck, he heard a metallic sound on his left door glass, which sounded like the glass broke. Hayes said he put on the brake. He said that at the same time he heard the

noise, Coone grabbed him by his shirt and left shoulder by the sleeve. Then Coone started hitting him in the head with a claw hammer. Coone had a hold of Hayes' sleeve with his left hand, and he had the hammer in his right hand, hitting him. Hayes said he was so far over to the right, he could not reach the clutch. He said Coone yelled several times, "I am going to kill you, you son of a bitch." Hayes said he was able to reach his gun that was in the left door pocket of his truck. While still trying to fight Coone off, he got the gun out of the holster and turned away from Coone, protecting himself with his arms. Hayes said he fired the gun in Coone's direction and Coone fell backward.

According to Coone, Hayes drove so closely to where he was lying that he almost ran over his legs. Coone stood up and began arguing with Hayes. Coone later told police that he took a couple of steps toward Hayes' truck, reached in through the driver's side window, and slapped him. At that point, Coone said, Hayes shot him in the neck and he fell to the ground. Coone said he did not have anything in his hands when he hit Hayes. He said there was a claw hammer on the ground, which he had been using to work on his truck. Coone told investigators that Hayes got out of the truck, picked up the hammer and took it with him back to the truck.

Pauline Hayes, Hayes' wife, testified that a few seconds after her husband left the house, she went to the front door to be certain it was locked. She observed what was happening and went outside on her front walk. She testified that Coone was standing up against the truck with his arms inside the cab and there was a confrontation going on. She stopped at the steps and heard a gun go off. She saw Coone fall over and Hayes come out of the truck. She testified that Hayes' face was covered with blood when he exited the truck.

Georgette Henley Hoyt, Coone's fiancée at the time, testified that she heard a "boom" and then flew out the front door and saw Coone laying on the ground with Hayes standing over him. She asked Hayes what he had done, but Hayes did not respond. She testified that she saw Hayes' face clearly right after the shooting and there was no injury to or blood on his face. She then ran to a neighbor's house to call 911.

James Connors, a St. Joseph police officer, arrived on the scene shortly after 12:20 p.m. Hayes told Connors that "he had shot the man after he hit him."

Dennis Dornhoffer, a St. Joseph fire captain, attended to Coone at the scene of the shooting. Coone told Dornhoffer, "That son of a bitch shot me and he tried to run over me." Dornhoffer then asked, "Then what?" and Coone said, "Well, then I tried to hit him." Dornhoffer said, "Then what?" and Coone responded, "That mother-fucker shot me." Hayes told Dornhoffer that Coone "hit him with a hammer or hit him and, you know, he shot him."

Hayes told Timothy Puett, another fireman at the scene, that "he was hit with a hammer" and that he was sitting in his truck when he was hit.

Patti Byrne, an emergency room nurse, testified that when Coone arrived at the emergency room, he was paralyzed, having respiratory problems, and was frightened and "worried if he was going to live or not." Byrne testified that Coone said "he had been working on his car and that someone in a truck came by and had tried to hit him with a truck, so he had something in his hand that he swung at the truck. And then he got up to go speak to him and this person shot him and he was very surprised by that."

The bullet that struck Coone passed through his neck, injuring his spinal cord and causing paralysis. Coone survived for sixteen days, but died from the bullet wound on June 19, 1997.

Hayes was charged with murder in the second degree, § 565.021.1,[1] armed criminal action by reason of murder in the second degree, § 571.015, voluntary manslaughter, § 565.023.1(1), armed criminal action by reason of voluntary manslaughter, § 571.015, and involuntary manslaughter, § 565.024.1. Hayes pleaded not guilty to all five counts. At the commencement of trial, the State dismissed the counts of voluntary manslaughter, armed criminal action by reason of voluntary manslaughter, and involuntary manslaughter, but asked the trial court to permit it to reserve instructions on those counts if appropriate at the close of the evidence.

Following a jury trial, Hayes was found guilty of involuntary manslaughter, § 565.024.1, and armed criminal action, § 571.015. He was sentenced to consecutive terms of seven years imprisonment.

This appeal follows.

### Argument

Because we conclude that Hayes' seventh point on appeal is dispositive and compels reversal, we need not address any of Hayes' other points on appeal. In his seventh point on appeal, Hayes claims that the trial court erred in limiting his defense of self-defense to the charge of murder in the second degree by omitting this defense in Instruction Number 8, the verdict director for involuntary manslaughter, because as a matter of law, self-defense is a proper defense in some cases of involuntary manslaughter.

In its brief on appeal, the State contends that Hayes requested and submitted Instruction Number 8, and therefore he is precluded from alleging error in the submission of that instruction on appeal. The State cites the instruction itself, which reads "Submitted by the Defendant." It originally read "Submitted by the State," but "State" was crossed out and "Defen-

---

1. All statutory references are to RSMo 1994.

dant" was written in. At trial, the court stated, "Instruction 8 is the submission of involuntary manslaughter, which is done on the request of the defendant, and is marked Instruction No. 8, 313.10." When the trial court asked Hayes' counsel if he had any "additional requests or objections" to the proposed instructions, Hayes did not object to the involuntary manslaughter instruction. In addition, during argument of this case on appeal, the State contended several times that Hayes requested the involuntary manslaughter instruction in this case.

In his brief on appeal, Hayes contends that while he did request an instruction on involuntary manslaughter, he did not request an erroneous instruction, and he did not draft Instruction Number 8. In support of his argument, Hayes notes that the typeface used in Instruction Number 8 is identical to that used in the other instructions submitted by the State. Hayes contends that the trial judge changed the reference on the instruction from "Submitted by the State" to "Submitted by the Defendant." During argument of this case on appeal, Hayes' counsel said, "Yes, we did ask for an involuntary manslaughter instruction. It is not the correct instruction, and that we didn't write it, either." In his rebuttal, Hayes' counsel stated, "I don't believe ... you can create a crime because you ask for an instruction. If the evidence isn't there, the fact the instruction was given doesn't make—and requested, as a matter of fact—doesn't make the crime happen, doesn't create the crime [inaudible]."

■ Upon review of the entire record, we conclude that Hayes submitted Instruction Number 8. In this respect, a party may not challenge the validity of an instruction he submitted at trial. *State v. Clay*, 975 S.W.2d 121, 133 (Mo. banc 1998), *cert. denied*, 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999).

■ Even if we were to give Hayes the benefit of the doubt and assume he did not

submit Instruction Number 8, he still did not properly preserve his claim of error in regard to the instruction because he did not object to it. Rule 28.03 provides as follows:

> Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions and verdict forms. The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

Because Hayes did not object at trial to the submission of Instruction Number 8, he may not now assign as error the trial court's submission of the instruction. *State v. Hill*, 970 S.W.2d 868, 872 (Mo.App. W.D.1998).

■ Where a party submits a jury instruction himself, we review a claim of error in regard to the submission of the instruction only for plain error, in our discretion. *State v. Chambers*, 891 S.W.2d 93, 105 (Mo. banc 1994); *State v. Parker*, 886 S.W.2d 908, 928–29 (Mo. banc 1994). Similarly, where a party does not object to the giving of a jury instruction at trial, our review is limited to plain error. *State v. Doolittle*, 896 S.W.2d 27, 29 (Mo. banc 1995); *State v. Shurn*, 866 S.W.2d 447, 465 (Mo. banc 1993).

■ "Plain error review of instructional error is warranted where an error so substantially affects the rights of an accused that manifest injustice results if it is left uncorrected." *State v. McCoy*, 971 S.W.2d 861, 864 (Mo.App. W.D.1998). "Instructional error constitutes plain error when it is clear the trial court so misdirected or failed to instruct the jury so that it is apparent the error affected the verdict." *State v. Beeler*, 12 S.W.3d 294, 300 (Mo. banc 2000).

In the present case, Instruction Number 6 provided as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 3, 1997, in the County of Buchanan, State of Missouri, the defendant caused the death of Tony Coone by shooting him, and

Second, that it was the defendant's purpose to cause serious physical injury to or to cause the death of Tony Coone, and

Third, that defendant did not act in lawful self-defense as submitted in Instruction No. 7,

then you will find the defendant guilty under Count I of murder in the second degree.

*   *   *   *   *

Instruction Number 8 provided as follows:

As to Count I, if you do not find the defendant guilty of murder in the second degree, you must consider whether he is guilty of involuntary manslaughter.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 3rd day of June, 1997, in the County of Buchanan, State of Missouri, the defendant caused the death of Tony Coone by shooting him, and

Second, that defendant recklessly caused the death of Tony Coone,

then you will find the defendant guilty under Count I of involuntary manslaughter. . . .

In determining whether the defendant recklessly caused the death of Tony Coone, you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross devia-

tion from what a reasonable person would do in the circumstances.

*   *   *   *   *

The jury acquitted Hayes of second degree murder, and convicted him of involuntary manslaughter.

While this case was pending on appeal, the Missouri Supreme Court handed down its opinion in *State v. Beeler*, 12 S.W.3d 294 (Mo. banc 2000), which required this court to reconsider the issue presented in Hayes' Point VII and ask the parties to rebrief the case regarding the impact of the *Beeler* decision with respect thereto. In *Beeler*, a city marshal shot and killed a man he had stopped for a traffic violation. *Beeler*, 12 S.W.3d at 295. Beeler contended he shot the man when the man pulled a hammer on him. *Id.* at 296. However, "several inconsistencies were apparent" in Beeler's story. *Id.* Beeler was charged with second degree murder. *Id.* at 297. The jury was instructed on second degree murder, which included a self-defense instruction, and the jury was given a separate instruction on involuntary manslaughter, which did not contain a reference to self-defense. *Id.* The jury found Beeler guilty of involuntary manslaughter. *Id.* On appeal, Beeler contended that the trial court erred in submitting the instruction on involuntary manslaughter because of the absence of evidence to support a finding that he acted in a reckless manner. *Id.* Beeler argued that it is inconsistent to be acquitted of second degree murder where the evidence supports submission of self-defense, and to be convicted of the lesser included offense of involuntary manslaughter. *Id.* The court found that Beeler was correct, but on different grounds. *Id.*

Section 562.016.4 provides that "[a] person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable per-

son would exercise in the situation." The court in *Beeler* found that the statutory definition of "reckless" includes "the conscious discharging of a firearm with disregard for a substantial and unjustifiable risk that death will result and that the conscious firing of the weapon constitutes a gross deviation from what a reasonable person would do to protect himself." *Id.* The court further found as follows:

The statutory definition of "reckless" conduct as it exists today is that the actor is liable for an intentional act if there is a conscious disregard of a risk of death to another and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

*Id.* at 299. The court found that "reckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force." *Id.*

The court in *Beeler* addressed the question of whether acquittal of a defendant of second degree murder where self-defense is the theory of the case is logically inconsistent with the submission of involuntary homicide. *Id.* at 300. The court found as follows:

One rational explanation exists for giving the lesser included offense instruction. The jury could believe the defendant acted unreasonably in defending himself, but not believe defendant had the requisite intent for second degree murder; that is, he did not knowingly cause the victim's death or have a purpose to do great harm to the victim. § 565.021.1(2). The jury in such case would acquit of second degree murder. At the same time, the jury could consistently find that the homicide involved a conscious disregard of a substantial and unjustifiable risk of death to the victim and that the force used was a gross deviation from that force reasonably necessary for defendant to protect himself. Because there is neither a statutory prohibition nor a logical inconsistency

between acquittal of second degree murder involving a claim of self-defense and conviction of involuntary manslaughter, the giving of the lesser included offense instruction is not necessarily error. Indeed, where the evidence permits an inference of reckless conduct and the state or accused requests the instruction, the trial court is obligated to give a proper involuntary manslaughter instruction.

*Id.* As in *Beeler,* the jury in the present case was instructed in such a way that it could have decided that 1) Hayes' shooting of Coone was done in self-defense, and 2) Hayes acted recklessly by consciously disregarding a risk that grossly deviated from reasonable behavior. "Such conclusions are necessarily inconsistent. One cannot be said to act reasonably, as self-defense requires, and grossly deviate from reasonableness, as is the case with one exhibiting a reckless state of mind, at the same time." *Id.* The court in *Beeler* concluded that the jury was not properly instructed. *Id.* The court found that the trial court's conclusion that self-defense is not a defense to involuntary manslaughter may have been correct had the jury only been instructed on involuntary manslaughter, but the jury was also instructed on self-defense in the second degree murder instruction. *Id.* at 301. The court found that "[t]he error could have been avoided by instructing the jury, as part of the manslaughter instruction, that if it determined defendant was not guilty of second degree murder because he acted in self-defense, the jury was required to acquit him of involuntary manslaughter." *Id.* (Footnote omitted.)

The court in *Beeler* found that the error in not apprising the jury of the inconsistency in finding self-defense and reckless behavior was compounded by the State's closing argument.[2] *Id.* at 300–01. In its closing argument in the present case, the State made an argument similar to the one made in *Beeler:*

Let me submit to you, however, that if—even if you should find the defendant not

---

**2.** The closing argument in *Beeler* was as follows:

If, when you are examining what your verdict should be, you find that the defendant shot and killed Tony Coone, that he did it—he had that purpose in mind when he pulled—when he did so, and that he wasn't acting in self-defense, if you find all of those things to be true beyond a reasonable doubt, then the verdict should be guilty of murder in the second degree.... If you find—if you do not find him guilty, however, of murder in the second degree, you then look at Instruction No. 8. Instruction No. 8 is involuntary manslaughter.... So you get to this if and only if you find that he is—that the defendant is not guilty of murder in the second degree.... *This instruction says nothing about self-defense because self-defense is not a defense in involuntary manslaughter. Even if you find that the defendant acted in self-defense, he may still be guilty of involuntary manslaughter.*

\* \* \* \* \*

(Emphasis added.)

The *Beeler* court found that "[w]ithout doubt," the theory of the State's second degree murder charge was that Beeler's killing of the victim was not done in reasonable self-defense, and "[t]he defense theory was clearly that the shooting was a knowing and reasonable response to the

> guilty of murder in the second degree, that is, you find there was self-defense, that is not the end of the job. Because, even if there was self-defense, he may still be guilty of involuntary manslaughter....
>
> . . .
>
> And, I'm going to make the rest of this argument on the basis of 'what if?' If you don't find that there's murder second, and the only way you can do that is if you find it was self-defense, then you've got to look at what—involuntary manslaughter. And, folks, it doesn't matter if he acted in self-defense.
> *Id.* at 301.

3. *State v. Erwin,* 848 S.W.2d 476 (Mo. banc 1993) is the case cited in *Ferguson* as an example of retrospective application being limited to those cases where the issue has been preserved. However, in *Erwin,* the

aggressive and threatening conduct" of the victim. *Id.* at 301. The court stated that it was clear that the jury's acquittal of Beeler on the second degree murder charge was based on the theory of self-defense, and "[t]hat verdict foreclose[d] any further trial on the question of whether defendant acted reasonably." *Id.*

■ We initially address whether the holding in *Beeler* applies to the present case. Where cases are silent on the retrospective application of their holdings and if the holdings pertain to substantive matters, they are applied retrospectively. *State v. Ferguson,* 887 S.W.2d 585, 587 (Mo. banc 1994). "Generally, however, retrospective application is limited to those cases 'subject to direct appeal,' or 'to all pending cases not finally adjudicated,' and is sometimes further limited to those cases where the issue has been preserved." [3] *Id.* (Citations omitted.) *Beeler* was handed down while the case at bar was pending on appeal. *Beeler* is silent as to its retrospective application, and it clearly pertains to a substantive matter. Therefore, we find that the holding in *Beeler* applies to the present case, even though Hayes has not properly preserved the issue.[4]

We next discuss the impact of *Beeler* on the case at bar. In *Beeler,* the court reversed the conviction of involuntary manslaughter and discharged the defendant.

court specifically stated that its holding was to be applicable only in cases tried in the future and cases then subject to direct appeal where the issue was preserved. *Erwin,* 848 S.W.2d at 484.

4. Hayes does not argue on appeal that the involuntary manslaughter instruction was erroneous in that it failed to provide that if the jury determined he was not guilty of second degree murder because he acted in self-defense, the jury must acquit him of involuntary manslaughter. Rather, his claim of error in regard to the involuntary manslaughter instruction is that the trial court erred in limiting his defense of self-defense to the charge of murder in the second degree by omitting a charge on that defense in the involuntary manslaughter instruction because self-defense is a proper defense in some cases of involuntary manslaughter.

*Beeler*, 12 S.W.3d at 301. Hayes argues that we should reverse his conviction and discharge him for four reasons: 1) this is the result reached in *Beeler*, which is substantially identical in facts, findings, and law to the present case; 2) there was no involuntary manslaughter charge below; 3) there was no evidence before the trial court that would satisfy the element of involuntary manslaughter that he "acted recklessly by consciously disregarding a risk that grossly deviated from reasonable behavior"; and 4) jeopardy has already attached.

◼ We address Hayes' first and third arguments together. The trial court had a duty to determine if the giving of a particular instruction in the context of the facts of this case was proper. *Id.* at 300. Under *Beeler*, we find that the trial court plainly erred in submitting the second degree murder and involuntary manslaughter instructions to the jury without including in the manslaughter instruction the direction that if the jury determined Hayes was not guilty of second degree murder because he acted in self-defense, the jury was required to acquit him of involuntary manslaughter. However, although Hayes argues that *Beeler* is substantially identical to the present case, we find that *Beeler* is distinguishable from this case in an important respect. The State in *Beeler* conceded that self-defense was the only way to acquit Beeler of second degree murder. *Id.* at 301. In *Beeler*, "[n]either the state nor defendant argued that the real issue for the jury to decide was the nuance in difference between a homicide involving a knowing state of mind and a homicide resulting from a conscious disregard of risk." *Id.* By contrast, in the present case, it is not as certain that the jury acquitted Hayes by reason of self-defense. As the State points out, the jury could reasonably have found that Coone reached into Hayes' truck and slapped him with an open hand, and that Hayes responded by shooting Coone. Under *Beeler*, the jury could reasonably have found that Hayes was not guilty of second degree murder because he did not act with

the "purpose to cause serious physical injury or to cause the death of" Coone, but that he acted with a conscious disregard of a substantial and unjustifiable risk of death to the victim and that the force used was a gross deviation from that force reasonably necessary to protect himself. Therefore, we find that remand and retrial on involuntary manslaughter is the appropriate remedy in the present case.

◼ Hayes claims that retrial for involuntary manslaughter is inappropriate because he was not charged with involuntary manslaughter at his original trial. "However, when there is sufficient evidence at trial to submit the case to the jury on a lesser-included offense of that charged in the indictment or information, double jeopardy is not offended by retrial of the lesser offense." *State v. Neal*, 14 S.W.3d 236, 241 (Mo.App. W.D.2000); *see also State v. O'Brien*, 857 S.W.2d 212, 221 (Mo. banc 1993) (finding no violation of double jeopardy in retrying the defendant on a lesser included offense).

◼ Hayes also contends that retrial on involuntary manslaughter would violate the principle of double jeopardy. The constitutional protection provided by the Fifth Amendment to the United States Constitution protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998); *State v. Smith*, 988 S.W.2d 71, 77 (Mo.App. W.D.1999). "The double jeopardy clause imposes no limitation upon the power of the State to retry a defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of the insufficiency of the evidence." *State v. Powell*, 783 S.W.2d 489, 490 (Mo.App. W.D.1990) (citation omitted). "[I]f a conviction is reversed solely due to trial error, then retrial is constitutionally permissible." *State v. Wood*, 596 S.W.2d 394, 398 (Mo. banc 1980). An improper jury instruction is trial error. *See State v. Wil-*

*born,* 812 S.W.2d 913, 918 (Mo.App. E.D. 1991). Furthermore, "a defendant who is found guilty and asks for a new trial cannot plead double jeopardy when tried again." *State v. Urban,* 796 S.W.2d 599, 601 (Mo. banc 1990). Hayes asked for a new trial, both before the trial court and on appeal. Therefore, we find that double jeopardy does not prevent retrial on involuntary manslaughter in this case.

Because we are required by the Missouri Supreme Court's decision in *Beeler* to reverse and remand for a new trial, it is not necessary for us to address Hayes' other points on appeal.

The judgment of the trial court is reversed, and the cause is remanded for a new trial for involuntary manslaughter.

All concur.