**STATE of Missouri, Respondent,**

v.

**David M. WHITE, Appellant.**

**No. WD 59638.**

Missouri Court of Appeals, Western District.

Oct. 22, 2002.

As Modified Nov. 26, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 2002.

Application for Transfer Denied Jan. 28, 2003.

184 

John M. Schilmoeller, Assistant Appellate Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before ULRICH, P.J., and SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

David M. White appeals the judgment of his convictions, after a jury trial in the Circuit Court of Jackson County, of murder in the second degree, § 565.021,[1] and armed criminal action (ACA), § 571.015, for which he was sentenced to consecutive life sentences in the Missouri Department of Corrections (MDOC).

In the appellant's sole point on appeal, he claims that the trial court plainly erred in giving Instruction No. 9, the verdict director submitting murder in the second degree, because it violated MAI–CR 3d 313.04, the mandatory instruction for submitting murder in the second degree and its Notes on Use, and the applicable law.

We reverse and remand for a new trial.

### Facts

The appellant met the victim, Adina Fabela, through a dating service on or about one week prior to September 2, 1998. After their initial meeting, the appellant and Fabela spent the majority of one week together at the appellant's grandmother's apartment in Lee's Summit, Missouri, the appellant's residence at that time. During this week together, the appellant and Fabela engaged in unprotected sex. Sometime during this period of time, the appellant came to believe that Fabela had the AIDS virus and that he may have contracted it from her.

On September 2, 1998, Fabela arrived at the appellant's apartment with her infant son. The appellant's sister, Deliska Keith, and her boyfriend, Brian Herridge, who were at the apartment when Fabela arrived, offered to babysit Fabela's son that afternoon. Fabela accepted the offer, and Keith and Herridge left the apartment with the child. At some point that afternoon, the manager of the apartment com-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

plex made contact with the appellant and advised him that he had to vacate the apartment immediately because the lease had expired. As a result, the appellant loaded all of his belongings, which included a 12–gauge pump-action shotgun, into Fabela's car, and the two of them left the apartment complex.

The appellant and Fabela drove to Longview Lake, where Fabela spoke with a friend, Misty Packer, on the appellant's cell phone. Packer testified at trial that Fabela sounded somewhat frightened when she spoke with her. After speaking with Packer for a short time, Fabela was told by the appellant to end the conversation, which she did. The appellant then received a call from Herridge concerning where Fabela should pick up her son.

After leaving Longview Lake, the appellant pulled into an unidentified driveway, took his shotgun out of the trunk and placed it inside the car. Upon seeing that, Fabela opened the passenger door and ran behind a tree. The appellant eventually persuaded Fabela to get back into the car, after assuring her that he was not going to hurt her. As the appellant continued driving, Fabela made several attempts to jump out of the car, but the appellant grabbed her and prevented her from doing so.

The appellant continued driving until they arrived at Bergin Lake in Blue and Gray Park. The appellant parked the car, loaded the shotgun and exited the vehicle. The appellant asked Fabela whether she was going to tell him if she had AIDS. Fabela did not answer, but followed the appellant, still armed with the shotgun, into a nearby wooded area. Once in the woods, the appellant asked Fabela again whether she had AIDS. Without responding, Fabela grabbed the barrel of the shotgun and told the appellant to pull the trigger. The appellant then attempted to hug Fabela, but she began hitting and pushing him. As a result, the appellant began firing the shotgun at Fabela. The appellant first shot Fabela in the legs and then gradually worked his way up to her head, shooting her six times in all. An autopsy later revealed that the shot to Fabela's head or either of the two shots to her chest would have been sufficient to cause her death.

Following the shooting, the appellant left the park in the victim's car and drove to the apartment of a friend, Greg Anderson. While at Anderson's apartment, the appellant called Keith and Herridge, who arrived at the apartment shortly thereafter. The appellant told Anderson, Keith, and Herridge that he had killed Fabela. Following this admission, the appellant drove Fabela's car to the Hyper–Mart in Kansas City, Missouri, and left it in the parking lot. Keith and Herridge then took the appellant to his mother's house where he also admitted to his mother that he had killed Fabela. The appellant's mother and Keith took Fabela's son to the police station, while the appellant's grandmother drove him to Stockton Lake, where he was arrested by law enforcement six days later.

On October 6, 1998, the appellant was charged by indictment in the Circuit Court of Jackson County with murder in the first degree, § 565.020, and ACA, § 571.015. His case proceeded to a jury trial on December 11, 2000. The jury was instructed on murder in the first degree; the lesser-included offense of murder in the second degree, § 565.021, and voluntary manslaughter, § 565.023; and ACA. On December 15, 2000, the jury returned guilty verdicts of murder in the second degree and ACA, and recommended life sentences on both convictions. On January 26, 2001, after the trial court had overruled the appellant's "Motion for Judgment of Acquittal or, in the Alternative, For a New

Trial," it sentenced him to consecutive life sentences in the MDOC.

This appeal follows.

## I.

■■■ In the appellant's sole point on appeal, he claims that the trial court plainly erred in giving Instruction No. 9, the verdict director instructing the jury on murder in the second degree, because it violated MAI–CR 3d 313.04, the mandatory instruction for submitting murder in the second degree and its Notes on Use, and the applicable law. Specifically, he claims that the instruction was in error because it submitted paragraph third, dealing with sudden passion, and paragraph fourth, dealing with self-defense, in the disjunctive rather than in the conjunctive, such that the State was relieved of its burden of proving all the essential elements of the offense of second-degree murder.

The appellant concedes that he did not properly preserve his claim of instructional error in this point for appellate review in that he failed to make a specific objection at trial to the giving of Instruction No. 9 and did not raise the issue in his motion for new trial. Rule 28.03;[2] *State v. Bradshaw*, 26 S.W.3d 461, 471 (Mo.App.2000). He, therefore, asks for plain error review under Rule 30.20. The State contends that plain error review is precluded in that the challenged instruction was submitted by the appellant, citing *State v. Clay*, 975 S.W.2d 121, 133 (Mo. banc 1998) and *State v. Gorman*, 940 S.W.2d 543, 546 (Mo.App. 1997).

It would appear that the cases cited by the State can be cited for the general proposition that an appellant cannot challenge the validity of an instruction on appeal which he or she offered at trial. However, having reviewed the record, we cannot say that the appellant "submitted" the instruction such that he would be foreclosed from requesting plain error review thereof under Rule 30.20. In that regard, the record indicates that, although Instruction No. 9 was prepared by the State, it was deemed by the trial court as being "tendered" by the appellant and was marked accordingly. The court did not give a reason why it deemed Instruction No. 9 as being tendered by the defense, when it was prepared by the State. Given the fact that the State actually prepared the second-degree murder verdict director, Instruction No. 9, we cannot agree that the appellant, in the context of waiving plain error review, was deemed to have submitted the instruction.

Even assuming that the appellant did submit Instruction No. 9 for purposes of Rule 30.20, appellate decisions other than those cited by the State, including those of the Missouri Supreme Court, appear to hold that plain error review of an instruction is not precluded due to the submission of the instruction by the appellant. *See State v. Chambers*, 891 S.W.2d 93, 105 (Mo. banc 1994); *State v. Parker*, 886 S.W.2d 908, 928–29 (Mo. banc 1994); *State v. Hayes*, 23 S.W.3d 783, 788 (Mo.App. 2000). We would admit, however, that there appears to be some confusion on this issue. In *Clay*, cited by the State, the Supreme Court, favorably citing *Parker*, stated that the "appellant may not now challenge the validity of Instruction 17 because he submitted it at trial" and did not discuss the issue of plain error review. *Clay*, 975 S.W.2d at 133. The Court previously had held, however, in *Parker* that: "[The appellant] himself offered Instruc-

---

2. All rule references are to the Missouri Rules of Criminal Procedure (2002), unless otherwise indicated.

tion 18, and may not turn around and challenge it. *State v. McMillin*, 783 S.W.2d 82, 97 (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Nonetheless, this Court will review for plain error. *Rule 30.20.*" 886 S.W.2d at 928–29. The Court used nearly the identical language of *Parker* in *Chambers*, 891 S.W.2d at 105.[3] In not mentioning plain error review in *Clay*, it is unclear whether it overruled *Chambers* and *Parker* on the issue of plain error review of the instructional error claimed. One would think not in that *Clay* did not expressly hold that plain error review was precluded and, in addition, favorably cited *Parker*. Given those circumstances and the express holdings in *Chambers* and *Parker* and our holding in *Hayes*, which followed *Chambers* and *Parker* and was decided after *Clay*, it appears sufficiently clear to us that plain error review of instructional error, under Rule 30.20, is not precluded where the appellant submitted the instruction.

 Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr*, 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley*, 51 S.W.3d 44, 53

(Mo.App.2001). "Plain" error for purposes of Rule 30.20 is error that is evident, obvious and clear. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App.2000). If the court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *Id.* As in the case of regular error, not every plain error requires reversal. *Carr*, 50 S.W.3d at 853. In the case of regular error, to be reversible, the error must have prejudiced the appellant. *State v. Taylor*, 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of plain error, the error must have prejudiced the appellant, except that such prejudice must rise to the higher level of manifest injustice or a miscarriage of justice. *State v. Cole*, 71 S.W.3d 163, 170 (Mo. *banc* 2002). Thus, even if obvious and clear error is found, the court then must determine whether manifest injustice or a miscarriage of justice resulted therefrom. Because the appellant's claim, on its face, establishes substantial grounds for believing that the trial court's submission of Instruction No. 9, submitting second-degree murder in violation of MAI–CR 3d 313.04, constituted obvious and clear error that resulted in manifest injustice or a miscarriage of justice to the appellant, we will review the claim for plain error.

In determining instructional error, we start with the proposition that if there is an MAI–CR instruction made applicable by the law or the Notes on Use, the trial court is required to instruct the jury based upon that instruction. Rule 28.02(c). The failure to give an instruction in violation of Rule 28.02 or any applicable Notes on Use is error, the prejudicial effect to be judicially determined. Rule 28.02(f); *State v.*

---

**3.** *Clay, Chambers* and *Parker* were all written by the same Supreme Court Justice.

*Altaffer,* 23 S.W.3d 891, 895 (Mo.App. 2000).

The State charged the appellant with murder in the first degree, § 565.020, alleging that he knowingly killed the victim after deliberation by shooting her with a 12-gauge shotgun. The jury was instructed not only on first-degree murder, but the lesser-included offense of second-degree murder, § 565.021. There is no dispute that in instructing on second-degree murder, the trial court was required to give a verdict director based upon MAI–CR 3d 313.04, which reads, in pertinent part:

((As to Count _____, if) (If) you do not find the defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree (under this instruction).)

(As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that (on) (on or about) [*date* ], in the (City) (County) of _____, State of Missouri, the defendant caused the death of [*name of victim* ] by [*Describe briefly the means by which death was caused, such as "shooting," "stabbing," "striking," etc.*] him, and

Second, [*Insert one or more of the following. Omit brackets and numbers. See Notes on Use 3.*]

[1] that defendant (knew) (or) (was aware) that his conduct (was causing) (or) (was practically certain to cause) the death of [*name of victim* ] (,)(or)

[2] that it was the defendant's purpose to cause the death of [*name of victim* ] (,)(or)

[3] that it was the defendant's purpose to cause serious physical injury to (or to cause the death of) [*name of victim* ],

(and)

(Third, that defendant did not do so under the influence of sudden passion arising from adequate cause,)

then you will find the defendant guilty (under Count _____) of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree (under this instruction, but you must then consider whether he is guilty of murder in the second degree under Instruction No. _____).

According to **Note on Use 4**, paragraph third of MAI–CR 3d 313.04 must be included in the verdict director if the defendant carries his or her burden of injecting the issue of whether the defendant caused the victim's death while under the influence of sudden passion arising from adequate cause.[4] Under § 565.023, a defendant who causes the death of a person while under the influence of sudden passion arising from adequate cause is guilty of voluntary manslaughter, but not murder.

At trial, in defense of the murder charge, the appellant offered evidence that he acted in self-defense, and in the alterna-

---

4. **Note on Use 4** reads:

A homicide that would be murder in the second degree-conventional is voluntary manslaughter if committed under the influence of sudden passion arising from adequate cause. Section 565.023.1(1), RSMo 1994. The burden of injecting this issue is on the defendant. If there is evidence supporting sudden passion from adequate cause, paragraph (Third) must be given. Further, an instruction on voluntary manslaughter, MAI–CR 3d 313.08, may be given upon request of a party or on the Court's own motion.

tive, that he acted out of sudden passion. While self-defense would act as a complete bar to a conviction for murder, sudden passion would only work to reduce second-degree murder to voluntary manslaughter. *State v. Hahn*, 37 S.W.3d 344, 349 (Mo. App.2000). In presenting evidence as to sudden passion, the appellant was obviously hedging his bets in the event the jury did not believe he acted in lawful self-defense in killing the victim. As to sudden passion, the trial court found that the appellant had properly injected the issue, requiring the inclusion of paragraph third in the verdict director submitting second-degree murder. Thus, in order to convict the appellant of second-degree murder, the State was required to prove the additional element that the appellant did not cause the victim's death while under the influence of sudden passion arising from adequate cause.

■■■■ As to a claim of self-defense, the defendant has the burden of injecting the issue at trial. § 563.031.4; *State v. Reynolds*, 72 S.W.3d 301, 305 (Mo.App. 2002). Once the defendant carries his or her burden of injecting the issue, the burden then shifts to the State to prove beyond a reasonable doubt that the defendant did not act in lawful self-defense, *State v. Francis*, 60 S.W.3d 662, 673 (Mo. App.2001), and the jury must be instructed accordingly. *Reynolds*, 72 S.W.3d at 305. MAI–CR 3d 306.06 is the mandatory instruction to be given when instructing on self-defense. In addition to the giving of an instruction patterned after MAI–CR 3d 306.06, Note on Use 2 of MAI–CR 3d 306.06 directs that a paragraph cross-referencing the self-defense instruction must be included in the verdict director, which shall read:

> (Second) (Third) ( [*next numbered paragraph* ] ), that defendant did not act

in lawful self-defense as submitted in Instruction No. ____[.]

In the case at bar, the trial court found that the appellant had presented sufficient evidence to inject the issue of self-defense and, accordingly, gave Instruction No. 11, patterned after MAI–CR 3d 306.06. Hence, in the verdict director for second-degree murder, Instruction No. 9, a fourth paragraph referencing the self-defense instruction, Instruction No. 11, was required, reading: "Fourth, that defendant did not act in lawful self-defense as submitted in Instruction No. 11." As a result, the State, in order to convict the appellant of second-degree murder, was required to prove, beyond a reasonable doubt, as a fourth element of its case, that the defendant in causing the victim's death was not acting in lawful self-defense.

■■■■ The trial court's verdict director submitting murder in the second-degree in this case, Instruction No. 9, reads, in pertinent part:

> As to Count I, if you do not find the defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about September 2, 1998, in the County of Jackson, State of Missouri, the defendant caused the death of Adina Fabela by shooting her, and
>>
>> Second, that it was the defendant's purpose to cause the death of Adina Fabela, and
>>
>> Third, that defendant did not do so under the influence of sudden passion arising from adequate cause, *or*
>>
>> Fourth, that defendant did not act in lawful self defense as submitted in Instruction No. 11

then you will find the defendant guilty under Count I of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

(Emphasis added.) The appellant contends that the use of "or" to connect paragraphs third and fourth was error in that it indicates the disjunctive and generally corresponds to the word "either," *Hawkins v. Hawkins*, 511 S.W.2d 811, 812 (Mo. 1974), leading the jury in this case to believe, incorrectly, that it could convict the appellant of second-degree murder if it found either paragraph third or fourth when, in fact, it was required to find both elements, as we discussed, *supra*.

In order to convict a defendant of a criminal offense, the State is required, as a matter of due process, to prove beyond a reasonable doubt each and every element of the offense. *State v. Hall,* 56 S.W.3d 475, 478 (Mo.App.2001). As such, a verdict director which allows the jury to convict a defendant without requiring the State to satisfy its burden of proving each and every element of the offense beyond a reasonable doubt is clearly erroneous. *State v. Ferguson,* 887 S.W.2d 585, 587 (Mo. *banc* 1994). There is no doubt that the use of "or" between paragraphs third and fourth in Instruction No. 9 was clear, obvious and evident error in that under the applicable MAI–CR and law concerning second-degree murder, the verdict director should have read "and," rather than "or," between paragraphs third and fourth to correctly advise the jury that to convict the appellant of second-degree murder, it was required to find *both* paragraphs in the State's favor. The only question is whether this error resulted in manifest injustice or a miscarriage of justice requiring us to reverse for plain error.

Clear and obvious instructional error is rarely found to result in manifest injustice or a miscarriage of justice, requiring reversal for plain error. *Hibler,* 21 S.W.3d at 96. The appellant has the burden to prove that the instructional error resulted in manifest injustice or a miscarriage of justice. *Id.* "In the context of instructional error, [reversible] plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *Id.* (citation omitted). In that regard:

an appellate court will be more inclined to reverse in cases where the erroneous instruction "did not merely allow a wrong word or some other ambiguity to exist, [but] excused the State from its burden of proof on [a] contested element of the crime." Additionally, this court has previously held that where a verdict director effectively omits an essential element of the offense, such an instruction rises to the level of plain error if the evidence in the case fails to establish the existence of the omitted element "beyond serious dispute."

*State v. Harney,* 51 S.W.3d 519, 533–34 (Mo.App.2001) (citation omitted).

The State essentially concedes that it was error to use the term "or" rather than "and" between paragraphs third and fourth in the second-degree murder verdict director. In addition, it does not argue that the issues of sudden passion and self-defense were not in serious dispute at trial. Rather, it contends that manifest injustice or a miscarriage of justice did not result from the instructional error in Instruction No. 9 when the instruction is read as a whole. In that regard, it argues that any initial misdirection caused by the improper use of "or" between paragraphs third and fourth was overcome by the ad-

ditional language of the instruction, instructing the jury that it could not convict the appellant of second-degree murder "unless you find and believe from the evidence beyond a reasonable doubt *each and all of these propositions.*" (Emphasis added.) The State does not cite any authority for this proposition, but simply argues that this language, giving it its plain and ordinary meaning, clearly informed the jury that in order to convict the appellant of second-degree murder it had to find all four paragraphs in the State's favor. We disagree.

 It is possible to argue that the instructional language in question could be interpreted as argued for by the State. However, when the instruction is read as a whole, it is clearly more susceptible to an interpretation by the jury that, in order to convict, it was simply required to find either paragraph third or fourth. Thus, while we understand the technical argument made by the State, it is unlikely that the jury believed that it was permitted to disregard the express disjunctive language of the instruction based on the "unless" language relied upon by the State. Hence, it is apparent to us that the jury in this case was misled by Instruction No. 9 such that the State was relieved of its burden of proving both of the propositions submitted in paragraphs third and fourth of Instruction No. 9, resulting in manifest injustice or a miscarriage of justice and requiring us to reverse his convictions for second-degree murder and ACA.[5]

 Where a conviction is reversed solely for trial error, such as the instructional error found in this case, retrial does not offend double jeopardy and is constitutionally permissible. *State v. O'Brien*, 857 S.W.2d 212, 221 (Mo. *banc* 1993); *Hayes*, 23 S.W.3d at 792. Furthermore, where, as here, the appellant requests a new trial, he or she cannot plead double jeopardy on retrial. *Hayes*, 23 S.W.3d at 793. Thus, in reversing the appellant's convictions, we remand for a new trial. However, inasmuch as the appellant was acquitted of murder in the first degree, but convicted of the lesser-included offense of murder in the second degree, double jeopardy does require that the retrial be limited to the lesser-included offense, *State v. Moseley*, 735 S.W.2d 46, 48 (Mo.App.1987), and the related ACA offense, *Hyman*, 37 S.W.3d at 391–92.

### Conclusion

The judgment of the appellant's convictions for murder in the second degree, § 565.021, and ACA, § 571.015, is reversed, and the cause is remanded for a new trial in accordance with this opinion.

ULRICH, P.J., and SPINDEN, J., concur.

---

5. A conviction for ACA cannot stand without a conviction on the underlying felony. *State v. Hyman,* 37 S.W.3d 384, 391 (Mo.App. 2001).