

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110897 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of Osage County |
| vs. | ) | Cause No. 20OS-CR00010-01 |
| | ) | |
| TERRY W. HOLTMEYER, | ) | Honorable Craig E. Hellmann |
| | ) | |
| Appellant. | ) | Filed: January 2, 2024 |

Before Judges Thomas C. Clark II, C.J., James M. Dowd, J., John P. Torbitzky, J.

**Introduction**

Following a bench trial in Osage County circuit court, the trial court convicted Terry

Holtmeyer (Appellant) of one count harassment first degree in violation of § 565.090 after

calling R.K.'s (Victim) employer, Holy Family School, and falsely accusing Victim of exposing

himself to children.[1] Appellant raises two points on appeal. First, he argues that the trial court

erred by admitting Appellant's phone records into evidence because the State of Missouri (State)

did not properly establish them as business records pursuant to § 490.680. Second, he argues that

the State did not present sufficient evidence for the court to find him guilty beyond a reasonable

---

[1] All statutory references are to the Revised Statutes of Missouri (2016).

1

doubt because the State did not establish that he was the person who made the telephone calls to the school.

We reverse the judgment and set aside the conviction because the state failed to comply with the statute when submitting the business records into evidence. However, we decline to address Appellant's sufficiency of the evidence argument and instead remand this matter for a new trial based on Appellant's first point. *See State v. Hayes*, 23 S.W.3d 783, 792 (Mo. App. W.D. 2000) (citing *State v. Wood*, 596 S.W.2d 394, 398 (Mo. banc 1980).

**Factual and Procedural Background**

Following a bench trial occurring on May 27, 2022 in Osage County circuit court, the court convicted Appellant of one count of harassment first degree. Viewed in the light most favorable to the verdict, the following was adduced at trial:

Appellant and Victim are neighbors. Initially, the parties informally agreed to split the expense of constructing a fence between their respective properties. During the fence construction, Victim was bothered by Appellant's repeated efforts to lease a separate piece of property that Victim had actively hunted over a lengthy time period. Victim suspected that Appellant was attempting to take control of this separate piece of property to ultimately exclude Victim and terminate his hunting privileges.

When Appellant submitted the fence invoice to Victim in September 2019, Victim refused to pay. The following week, Appellant stopped Victim on the road and remarked, "You pay me for the fence, and I'll forget about it," but again Victim refused. Following another exchange of Appellant demanding payment and Victim refusing, Appellant threatened, "If you step one foot on my property, I'm going to blow your f—king head off." Subsequently, Victim called and alerted law enforcement about the threat.

The next week and later that same month, Appellant blocked the road with his vehicle while Victim attempted to pass. Although Victim recognized that Appellant was attempting to get his attention, Victim refused to respond and did not even roll down his window. Eventually Appellant moved his vehicle, allowing him to proceed. Then, Appellant drove to Victim's residence, intending to speak with Victim's wife. After he was unable to locate her, Appellant spun his vehicle tires, discharging driveway gravel and rocks in the direction of Victim's cabin, another vehicle belonging to Victim and a second vehicle belonging to Victim's son-in-law. Based on Appellant's collective actions, Victim successfully obtained an ex parte order of protection against Appellant on September 20. Three days later and on the same day as the telephone call occurred, Appellant learned that Victim's wife had received an ex parte order of protection against him as well.

Victim worked as a janitor at Holy Family School during his ongoing dispute with Appellant. On September 23, a secretary (Secretary) at Holy Family School received a telephone call from a person wanting to speak with the principal (Principal). Secretary informed the caller that Principal was currently unavailable but would be available closer to 1:00 p.m. When the caller telephoned back, Secretary informed him to call back in 45 minutes because Principal was at lunch.

As instructed, the individual called back on a third occasion at or around 1:45 p.m. and again asked to speak to Principal. Secretary believed the same person made the three calls and described the caller's voice as sounding drunk and slurred. When Principal talked to the caller, the caller told her that the school should fire Victim because he was exposing himself to children at the school. Principal asked the caller for his name, but the caller did not identify himself. Then, Principal informed the caller that the school could not just fire someone and asked the

caller if his lawyer was available to speak with her. The caller responded that he did not have a lawyer, but stated, "[I]f you don't do something, you will have the news media and that at your door, and I don't think you want that." Also, the caller stated that some of the parents with children in the school knew about Victim's alleged behavior but were afraid to come forward, fearing repercussions for their children.

Consequently, Principal contacted the school pastor and interim superintendent (Pastor) and the school's diocesan attorney. When Victim arrived at school later that day, Principal spoke with him and informed him of the telephone calls. Principal described the caller as being "an older man with a gravelly throat." At trial, Victim testified that after hearing Principal's description of the caller, "[T]hat's when I knew who it was because [Appellant's] got a voice." The school administration placed Victim on administrative leave with pay for three days while the school investigated the allegations against him, interviewing parents and teachers. Victim testified that he "shook for three hours" because of the anger he felt from Appellant's actions and he was afraid his wife would leave him due to the allegations. Further, he testified that a few parents with children in the school "shunned" him and told their children to avoid interacting with him.

Before calling Principal as a witness, the State attempted to introduce State's Exhibit 1, Appellant's AT&T telephone records, into evidence as a business record with an accompanying affidavit pursuant to § 490.680. Appellant objected to the introduction, arguing that the affidavit did not satisfy the statutory requirements because it contained only a digital signature and was not notarized. The trial court took Appellant's objection under submission with the case and allowed the State to proceed with the evidence.

4

Initially, Principal identified the school telephone number for the record. When provided with Exhibit 1, Appellant's telephone records, Principal stated that the document reflected that five telephone calls were directed to the school telephone number from Appellant's telephone number at or around the same time Appellant allegedly raised his allegations against Victim.

During closing arguments, defense counsel stated that he believed, without admission of State's Exhibit 1, the State could not reach its burden proving Appellant guilty beyond a reasonable doubt. The trial court responded:

> Court: And [Defense Counsel], I agree with you, and I will make a determination of whether or not there has been compliance with the business records statute. And if you're right, then your argument is correct on that point.

After the close of all evidence and argument, the court had the following exchange with the parties:

> Defense Counsel: And, Judge, just so I don't research something I don't need to. Is it fair to say that if you did rule in favor of the exclud(sic)—or of not admitting [State's Exhibit 1], that the Court would then not consider the questions that were directed to [Principal]—
>
> Court: Absolutely.
>
> Defense Counsel: Understood.
>
> …
>
> Court: Keep in mind, however—well, not keep in mind because you don't know this, but if I determine that State's Exhibit 1 is admissible based on the business record statutes, I intend to find your client guilty beyond a reasonable doubt.

On June 13, the trial court denied Appellant's objection to the admission of State's Exhibit 1 and found Appellant guilty of harassment first degree. On August 12, the court sentenced him to four years imprisonment in the Missouri Department of Corrections, but suspended execution of the sentence, ordering five years of probation. As a condition of

5

probation, the court ordered Appellant to serve 30 days in the Osage County Jail. Now Appellant appeals.

## Discussion

*Point I: Admission of Telephone Records*

In his first point, Appellant argues that the trial court erred by admitting Appellant's phone records into evidence because the State of Missouri (State) did not properly establish Exhibit 1 as business records pursuant to § 490.680. We agree.

*Standard of Review*

The trial court "has broad discretion in admitting evidence at trial." *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc 2020). We review the trial court's ruling on the admission or exclusion of evidence for abuse of discretion. *State v. Suttles*, 581 S.W.3d 137, 145 (Mo. App. E.D. 2019). A circuit court abuses its discretion only when its ruling is "clearly against the logic and circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Brandolese*, 601 S.W.3d at 533 (quoting *State v. Brown*, 939 S.W.2d 882, 883–84 (Mo. banc 1997)); *see also Suttles*, 581 S.W.3d at 145. Further, this Court reviews the trial court "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Brandolese*, 601 S.W.3d at 533–34 (quoting *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005)). Trial court error is not prejudicial unless "there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* at 534.

*Analysis*

On appeal, the State concedes that the telephone records were improperly admitted into evidence because Exhibit 1 did not comply with § 490.692. Specifically, the AT&T telephone

6

records did not contain a sufficient affidavit or a written declaration of oath from a person authorized to administer the oath, like a notary public. *Brown v. Chipotle Services, LLC*, 645 S. W.3d 518, 524 (Mo. App. E. D. 2020). Here, the AT&T custodian of records failed to demonstrate under oath that the telephone records were a true and accurate copy as statutorily required. His digital signature appears unnotarized and without any certificate of authenticity that he attested under oath about the accuracy of these documents. An unnotarized digital signature may be good enough at AT&T but it is insufficient under the laws of Missouri. Although we agree that the State improperly submitted the unnotarized, digitally signed exhibit at trial, nothing prohibits the State from reintroducing this evidence at a subsequent trial pursuant to the statutory guidelines. Point I is granted.

After considering Appellant's first point, we decline to address his second point where he argues that the State failed to present sufficient evidence for the court to find him guilty beyond a reasonable doubt. As the Supreme Court articulated in *State v. Wood*, admissibility of evidence and sufficiency of evidence constitute separate inquiries. 596 S.W.2d 394, 398–99 (Mo. banc 1980). "*Wood* decided at most that specifically when the reviewing court reverses for inadmissible evidence, the defendant is not entitled to a determination whether the evidence was sufficient to convict him, since such inquiry might prejudice the State if both the inadmissible evidence were ignored and the State were deprived of a proper opportunity to present additional evidence . . ." *State v. Feldt*, 512 S.W.3d 135, 155 (Mo. App. E.D. 2017), *abrogated on other grounds by State v. Hilbert*, 663 S.W.3d 462 (Mo. banc 2023). Appellant's sufficiency argument is predicated on the erroneous admission of his phone records. Essentially, Appellant argues that but for the erroneous admission of the records, the State's evidence against him would have been insufficient. However, this argument disregards the fact that the State would have likely had the

7

opportunity to present additional or alternative evidence establishing the caller's identity had the trial court ultimately found the records inadmissible. Following *Wood*, we reverse and remand the case for a new trial on the issue of admissibility and forgo a discussion of Appellant's sufficiency argument in fairness to the parties.

## Conclusion

Due to the admission of the telephone records into evidence which was in error, we reverse the trial court's judgment of conviction and remand the cause for a new trial consistent with this opinion.

_____
Thomas C. Clark II, C.J.

James M. Dowd, J. and
John P. Torbitzky, J., concur.