STATE of Missouri, Respondent,

v.

**Patrick L. BECK, Appellant.**

**No. WD 63708.**

Missouri Court of Appeals,
Western District.

July 26, 2005.

Craig A. Johnston, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, C.J., and SPINDEN and HOLLIGER, JJ.

EDWIN H. SMITH, Chief Judge.

Patrick L. Beck appeals the judgment of his conviction, after a jury trial in the

Circuit Court of Morgan County, of assault in the second degree, § 565.060,[1] for which he was sentenced to three years in the Missouri Department of Corrections. He was charged with assault in the first degree, § 565.050, but was acquitted of that offense. He was charged with stabbing the victim with a knife, causing serious physical injury. At trial, he admitted to the stabbing, but claimed self-defense, in accordance with § 563.031. Specifically, he claimed that he was justified in stabbing the victim in that the victim held him from behind while two of the victim's friends approached him brandishing a baseball bat and a metal pipe in a threatening manner.

The appellant raises three points on appeal. In Point I, he claims that the trial court plainly erred in failing to declare, *sua sponte,* a mistrial for the State's arguing to the jury that in considering whether the appellant acted in self-defense, as submitted in Instruction No. 11, which was proffered by the appellant and patterned after MAI–CR 3d 306.06, it could only consider the actions of the victim and not those of his friends because the argument misstated the law of self-defense found in § 563.031. In Point II, he claims that the trial court plainly erred in failing to modify, *sua sponte,* Instruction No. 11, to instruct the jury that it could consider not only the actions of the victim, but the victim's friends, in determining whether he acted in self-defense in stabbing the victim, because without modification, MAI–CR 3d 306.06, contrary to the law of self-defense, does not provide for instances of self-defense in cases of multiple assailants, as in this case. In Point III, he claims that the trial court plainly erred in entering its judgment of conviction on the jury's verdict finding him guilty of the class C felony of assault in the second degree, § 565.060, as submitted in Instruction No.

7, because it did not, as required by due process, hypothesize all the requisite proof elements of that crime.

We reverse and remand.

### Facts

In the early morning hours of August 6, 2000, an incident occurred in the parking lot of the Hangout Bar and Grill in Ivy Bend, Missouri, involving the appellant and Matthew Snarr, the victim. Prior to the incident, both men, who had never met, had been in the bar for several hours with different groups of people. At some point, they exited the bar and a confrontation ensued in the parking lot, which ultimately resulted in the appellant stabbing the victim six times.

On April 14, 2003, an information was filed in the Circuit Court of Morgan County, charging the appellant with assault in the first degree, § 565.050. The appellant's case proceeded to a jury trial on September 2, 2003. The appellant admitted at trial to stabbing the victim, but claimed he was acting in self-defense. The victim testified that the appellant followed him outside of the bar and attacked him with a knife. He testified that neither he nor his friends provoked the appellant in any way.

The appellant testified that the victim and two of his friends instigated a fight with him and his friend, Waylon Bashrum, because one of the victim's friends believed Bashrum was "looking at [his] old lady." He further testified that the victim forcefully held him from behind while the victim's friends approached him brandishing a baseball bat and metal pipe in a threatening manner. According to the appellant, it was necessary for him to stab the victim because he believed it was his only means of escaping the victim's hold and the vic-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

tim's friends were approaching with the intent to assault him.

The jury was instructed on first-degree assault, and the lesser-included offenses of assault in the second and third degree. At the request of the appellant, the jury was instructed on the issue of self-defense in Instruction No. 11, which was proffered by the appellant and patterned after MAI–CR 3d 306.06. Instruction No. 11 reads:

One of the issues in this case is whether the use of force by the defendant against Matthew Snarr was in self-defense. In this state, the use of force, including the use of deadly force, to protect oneself from harm is lawful in certain circumstances.

In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect himself.

As used in this instruction, the term 'reasonable belief' means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of self-defense in this case you are instructed as follows:

If the defendant was not the initial aggressor in the encounter with Matthew Snarr, and if the defendant reasonably believed he was in imminent danger of harm from the acts of Matthew Snarr

and the defendant used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense.

The State has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty in this case.

During closing arguments, the State twice commented on the appellant's self-defense instruction, Instruction No. 11. First, the prosecutor stated: "I would suggest you read the Court's instruction to you on self-defense. It only relates to what Matthew Snarr did, not what anybody else—what the defendant claims somebody else did." Second, during the State's final argument, the prosecutor stated: "[The appellant], under the law, whether we like it or not, is entitled to react only against what Matthew Snarr did, not what some other people supposedly did."

On September 2, 2003, the jury returned its verdicts finding the appellant not guilty of assault in the first degree, but guilty of assault in the second degree. On September 23, 2003, the appellant filed a motion for judgment of acquittal or, in the alternative, for a new trial. None of the issues raised by the appellant on appeal, however, were asserted in the motion, which was overruled.

On January 14, 2004, the trial court sentenced the appellant to three years in the Missouri Department of Corrections. In its form judgment entry, the trial court indicated that the appellant had been convicted of assault in the first degree, a class B felony,[2] rather than assault in the second

2. Under § 565.050.2, assault in the first degree can be either a class A or class B felony, depending on whether the actor inflicts serious physical injury on the victim.

degree, a class C felony, as found by the jury.

This appeal followed.

## I.

Before addressing the merits of the appellant's claims of error, we first must address the obvious discrepancy between the trial court's judgment entry, convicting the appellant of the class B felony of assault in the first degree, § 565.050, and the jury's guilty verdict, finding him guilty of the class C felony of assault in the second degree, § 565.060. Because the parties do not raise this issue on appeal, our review of this issue, if any, would be for plain error, in accordance with Rule 30.20.[3]

■ Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. State v. Carr, 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise our discretion to grant plain error review, we look to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed error that is evident, obvious, and clear, affecting a substantial right of the defendant, which resulted in manifest injustice or a miscarriage of justice. State v. Dudley, 51 S.W.3d 44, 53 (Mo.App.2001); State v. Hibler, 21 S.W.3d 87, 96 (Mo.App.2000).

■ If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps.

First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious, and clear. Id. As in the case of our review for "regular" error, not every evident, obvious, and clear error found mandates reversal. Carr, 50 S.W.3d at 853. In the case of "regular" error, to be reversible, the error found must have prejudiced the appellant. State v. Taylor, 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of plain error, the error found must have prejudiced a substantial right of the appellant, except that such prejudice must rise to the level of manifest injustice or a miscarriage of justice. State v. Cole, 71 S.W.3d 163, 170 (Mo. banc 2002). Thus, even if evident, obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. Hibler, 21 S.W.3d at 96.

In its form judgment entry, the trial court found that the appellant was convicted of the class B felony of assault in the first degree, as originally charged by the State. However, the jury, in its verdict, found him guilty of the lesser-included offense of assault in the second degree, a class C felony, as submitted in Instruction No. 7, thereby acquitting him of assault in the first degree. State v. Collins, 154 S.W.3d 486, 489 (Mo.App.2005). In that regard, the record reflects the following:

THE COURT: The verdict form returned by the jury reads as follows: 'We, the jury, find the defendant, Patrick Beck, guilty of assault in the second degree as submitted in Instruction Number 7.' It is signed by the foreperson of the jury.

indicated.

---

**3.** All rule references are to Missouri Rules of Criminal Procedure 2005, unless otherwise

As to sentencing, the jury recommended that the appellant be sentenced to three years in the Missouri Department of Corrections and fined. The trial court accepted the jury's recommendation, stating:

> Mr. Beck, you had your right to a jury trial, and the jury found you guilty. Their recommendation was three years imprisonment, plus a fine in the matter. In accordance with that, it's the judgment and sentence of this Court that you be transported to the reception center of the Missouri Department of Corrections by the sheriff of Morgan County, Missouri, with one guard allowed, there to be kept and confined in an institution to be designated by the Missouri Department of Corrections for a term of three years unless sooner discharged according to law.

Section 558.011 sets forth the authorized punishments, *inter alia*, for class B and class C felonies, providing:

> 1. The authorized terms of imprisonment, including both prison and conditional release terms, are:
>
> . . . .
>
> (2) For a class B felony, a term of years not less than five years and not to exceed fifteen years;
>
> (3) For a class C felony, a term of years not to exceed seven years;

Thus, by sentencing the appellant to three years in prison, the trial court sentenced him as though he had been convicted of a class C felony, rather than a class B felony, as indicated in its judgment. Given this fact, along with the trial court's express declaration that it was entering judgment in accordance with the jury's verdict, it is readily apparent that the trial court, in its form judgment entry, mistakenly checked the box indicating that the appellant was convicted of assault in the first degree.

As a general rule, where there is a material discrepancy between the oral pronouncement of the trial court's judgment and sentence, and the written judgment entry, the oral pronouncement controls. *Collins*, 154 S.W.3d at 492 (citing *State v. Patterson*, 959 S.W.2d 940, 941 (Mo.App.1998)). The reason for that being that a judgment derives its force from the rendition of the court's judicial act and not from the ministerial act of its entry upon the record. *Id.* Consequently, here, the trial court's judgment entry was in obvious error as to the class of felony of which the appellant was convicted. To allow that judgment to stand would result in a clear miscarriage of justice in that it would memorialize a conviction of the appellant that never occurred. Hence, in reviewing the appellant's claims, we review on the premise that he was convicted of the class C felony of assault in the second degree, not the class B felony of assault in the first degree, as indicated in the trial court's form judgment entry.

## II.

In Point I, the appellant challenges the State's argument to the jury at trial as to the law of self-defense, on which the jury was instructed in Instruction No. 11. More specifically, he attacks the State's argument to the jury interpreting the law of that instruction. In Point II, he challenges whether Instruction No. 11, which he proffered and was patterned after MAI–CR 3d 306.06, correctly advised the jury of the law of self-defense, as found in § 563.031 and applied to the specific facts of his case. Given these challenges, we necessarily discuss Point II first so as to determine the law of self-defense, as applied in this case and on which the determination of Point I depends for resolution.

In Point II, the appellant claims that the trial court plainly erred in failing to modify, *sua sponte*, his self-defense instruction, Instruction No. 11, to instruct the jury that it could consider not only the actions

of the victim, but the victim's friends, in determining whether the appellant acted in self-defense in stabbing the victim, because without modification, MAI–CR 3d 306.06, contrary to the law of self-defense, does not properly instruct the jury in cases of self-defense involving multiple assailants, as in this case. Specifically, he claims that in order to correctly instruct the jury on the law of self-defense in his case, the trial court should have modified, *sua sponte,* Instruction No. 11 to expressly instruct the jury that, in determining whether he reasonably believed he was "in imminent danger of harm," justifying his using physical force against the victim to defend himself, it could consider not only the imminent danger of harm from the victim, but the imminent danger of harm from the victim's friends, who he believed were acting in concert with the victim to harm him.

MAI–CR 3d 306.06, the mandatory MAI–CR 3d instruction for submitting self-defense, Note on Use 2; *State v. White,* 92 S.W.3d 183, 191 (Mo.App.2002), reads, in pertinent part:

### PART A—GENERAL INSTRUCTIONS

One of the issues (as to Count___) (in this case) is whether the use of force by the defendant against [*name of victim*] was in self-defense. In this state, the use of force (including the use of deadly force) to protect oneself from harm is lawful in certain situations.

. . . .

[*Use the material in [2] in ALL cases. Omit brackets and number.*]

[2] In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force that he reasonably believes to be necessary to protect himself. . . . [*Use the material in [4] in ALL cases. Omit brackets and number.*]

■ As used in this instruction, the term 'reasonable belief' means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

### PART B—SPECIFIC INSTRUCTIONS

On the issue of self-defense (as to Count___) (in this case), you are instructed as follows: [*Select the appropriate paragraphs. Omit brackets and number.*]

[1] [*If there is evidence the defendant was the initial aggressor, use the appropriate portions of the following material. If there is no evidence that the defendant was the initial aggressor, skip this paragraph [1] and go to paragraph [2].*]

If the defendant was not the initial aggressor in the encounter with [*name of victim*],

(or if he was the initial aggressor and clearly indicated to [*name of victim*] his withdrawal from the encounter, [*See Notes on Use 5(a) for modification if a claim of lawful use of force is raised.*])

[2] [*Insert either [A], [B], [C], or [D] as appropriate. Omit brackets and material within the brackets.*]

[A] [*Use the following when there is no evidence as to the use of deadly force.*]

(and if) (If) the defendant reasonably believed he was in imminent danger of harm from the acts of [*name of victim*] and the defendant used only such force

as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense.

"The first part of the instruction, part A, sets out the general requirements for the use of force in self-defense." MAI–CR 3d 306.06, Note on Use 4. "The second part of the instruction, part B, gives specific instructions relating to the specific case." *Id.,* Note on Use 5. "The third part of this instruction, part C, deals with matters of evidence." *Id.,* Note on Use 7.

The appellant contends that in order to properly instruct the jury on the law of self-defense, where, as here, there was evidence of multiple assailants, MAI–CR 3d 306.06 must be modified. Specifically, he claims that MAI–CR 3d 306.06, Part B—SPECIFIC INSTRUCTIONS, paragraph [2][A] should be modified so as to read:

> (and if) (If) the defendant reasonably believed he was in imminent danger of harm from the acts of [*name of victim* ] [*and those whom the defendant reasonably believed were acting in concert with* [*name of victim* ]] and the defendant used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense.

The bracketed language: "[*and those whom the defendant reasonably believed were acting in concert with* ]" is the language the appellant is contending should have been added, *sua sponte,* by the trial court to Instruction No. 11 and was not.

The State contends in its brief that: (1) the appellant waived plain error review of his claimed instructional error as to Instruction No. 11 because he proffered it; and, (2) in the alternative, even if he did not waive plain error review, there was no error, plain or otherwise, in the trial court's failure to modify, *sua sponte,* Instruction No. 11, because it was patterned after the mandatory self-defense instruction, MAI–CR 3d 306.06, and that it correctly stated the law of self-defense in

cases involving multiple assailants. We disagree.

## A. No Waiver of Plain Error Review

▓▓▓▓ Rule 28.03 requires counsel to make specific objections to an instruction considered erroneous. If a party fails to object to an instruction, prior to the jury's retiring to consider its verdict, that party may not assign as error on appeal the giving or failure to give that instruction. *Id.* While Rule 28.03 makes it clear that a party's failure to object at trial to an instruction preserves nothing for review as to the giving or the failure to give that instruction, *State v. Hopkins,* 947 S.W.2d 826, 829 (Mo.App.1997), the Missouri Supreme Court, in *State v. Wurtzberger,* 40 S.W.3d 893 (Mo. *banc* 2001), held that the failure to object does not waive plain error review, pursuant to Rule 30.20.

In *Wurtzberger,* the defendant was convicted of attempting to manufacture a controlled substance, methamphetamine, § 195.211.1. 40 S.W.3d at 894. He claimed, *inter alia,* on appeal that the trial court had plainly erred in giving the State's verdict director, instructing the jury on that offense. *Id.* at 896. The State contended that the defendant had waived plain error review of the State's verdict director in that his counsel, when asked at the instruction conference, expressly stated that he had "no objection" to the giving of the challenged instruction. *Id.* at 897. In ruling that the defendant had not waived plain error review by stating "no objection," the Court stated: "Although the state is correct that appellant waived appellate review when counsel failed to raise a specific objection to the disputed … instruction, it misconstrues the extent of the waiver. Unpreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." *Id.* at 898.

Our case is factually distinguishable from *Wurtzberger*. There the defendant was attacking on appeal the verdict director submitted by the State, to which he did not object at trial. However, in our case, the defendant is attacking on appeal the verdict director he himself submitted at trial. As to that circumstance, the Missouri Supreme Court stated in *State v. Leisure*, 796 S.W.2d 875, 877 (Mo. *banc* 1990): "This Court has long held that a defendant cannot complain of an instruction given at his request." This holding is in keeping with the time-honored general rule that a party cannot invite error and then raise it as reversible error on appeal. *State v. Riggins*, 987 S.W.2d 457, 463 (Mo. App.1999); *State v. Radley*, 904 S.W.2d 520, 523 (Mo.App.1995); *State v. Collier*, 892 S.W.2d 686, 691–92 (Mo.App.1994); *State v. Miller*, 593 S.W.2d 895, 897 (Mo. App.1980). Logically, if a party gets what he requests from the trial court, he should not be able to convict it of error, plain or otherwise, for complying with his request. More significant as to why this should be the law, however, is the fact that § 545.030.1 provides, in pertinent part, that no criminal "trial, judgment or other proceedings [shall] be ... in any manner affected: ... (16) For *any* error committed at the instance or in favor of the defendant[.]" (Emphasis added.) In referencing "any" error in § 545.030.1, it seems clear that the legislature intended to include "every" error of any stripe, which would include plain error. *See State v. Williams*, 24 S.W.3d 101, 115 (Mo.App. 2000) (*citing Boone County Court v. State*, 631 S.W.2d 321, 325 (Mo. *banc* 1982), holding that "any" should be construed as being "all-comprehensive" in a statutory provision). While *Leisure* and § 545.030.1(16) would seem to clearly mandate that the appellant's proffering of Instruction 11 at trial precluded or estopped him from challenging on appeal the trial court's giving of that instruction, the Missouri Supreme Court's holding in *State v. Derenzy*, 89 S.W.3d 472 (Mo. *banc* 2002), suggests otherwise.

In *Derenzy*, the defendant was charged with the delivery of a controlled substance, marijuana, within 2,000 feet of a school, in violation of § 195.214.1. 89 S.W.3d at 473. At trial, the defendant proffered a verdict director on the lesser-included offense of possession, which failed to accurately describe the charged offense. *Id.* The defendant's proffered verdict director on the lesser-included offense was rejected by the trial court, the court finding that possession of marijuana was not a lesser-included offense of the charged offense. *Id.* at 473–74. The defendant was convicted of the charged offense, and he appealed. *Id.* at 474. After opinion by this court, the case was transferred to the Missouri Supreme Court. *Id.* The Court found that the possession of marijuana was a lesser-included offense of the charged offense and that the defendant was required to submit a proposed instruction instructing the jury thereon. *Id.* at 474–75. With respect to the appellant's failure to proffer a correct version of such an instruction, the Court held that the failure: "under [the] circumstances render[ed] his claims of error unpreserved ... [such that he] waived Rule 28.03 review of the point." *Id.* at 475 (*citing Wurtzberger*, 40 S.W.3d at 897). However, the Court held that an "instruction on the lesser included offense was mandat[ed]" and that the defendant's failure to submit a proper lesser-included instruction did not waive plain error review, under Rule 30.20, of the trial court's failure to give such an instruction. *Id.* The Court then held that the trial court's failure to give a proper lesser-included instruction constituted "plain error result[ing] in manifest injustice" to the defendant, requiring reversal and remand for a new trial. *Id.*

We read *Derenzy* for the proposition that if a lesser-included instruction is mandated, the trial court is obligated to give a correct one and that while the failure of the defendant to provide a correct instruction for that purpose, as required by Rule 28.02(b), waives appellate review, under Rule 28.03, it does not waive plain error review, under Rule 30.20. It seems logical that the Court's rationale for its holding in *Derenzy* would extend to a mandated self-defense instruction, such that even if the defendant proffers such an instruction in improper form, he does not waive plain error review thereof.

In *State v. Westfall,* 75 S.W.3d 278, 281 (Mo. *banc* 2002), also decided by the Missouri Supreme Court, the defendant was convicted of first-degree assault and armed criminal action. *Id.* at 280. He appealed, claiming, *inter alia,* that the trial court erred in rejecting his proposed self-defense instruction. *Id.* The trial court did give a self-defense instruction, patterned after MAI–CR 3d 306.06, but not the one proposed by the defendant. The instruction given hypothesized deadly force, as provided in § 563.031.2, while the defendant sought a self-defense instruction, also patterned after MAI–CR 3d 306.06, that hypothesized physical force, as provided in § 563.031.1. As the Court noted, this was a critical distinction "because the standard for justifying non-deadly self-defense is much lower." *Id.* at 282. The instruction offered by the defendant did not comply with MAI–CR 3d 306.06. The State argued that it was not error for the trial court to reject the defendant's instruction because it was not in proper form. While the Court noted in its opinion: "Even if no objection is made, the failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights"; it did not address, in the body of the opinion, the issue of whether by proposing an incorrect instruction, the defendant was estopped from any appellate review, in-

cluding plain error review. However, in a footnote, the Court noted: "Once [the defendant] injected self-defense into the case the trial court was required to instruct on self-defense, even in the absence of a request for such an instruction, and even if such an instruction was offered *but not in proper form.*" *Westfall,* 75 S.W.3d at 281 n. 9 (emphasis added). This is consistent with the reasoning in *Derenzy* and applying that rationale to cases of mandated self-defense instructions.

Based on the Court's opinion in *Derenzy* and its footnote in *Westfall,* and the fact that the trial court, here, found that the appellant had carried his burden of injecting the issue of self defense, as required by § 563.031.4, such that the giving of a proper self-defense instruction by the court was mandatory, the appellant did not waive plain error review of *his* self-defense instruction, Instruction No. 11.

In finding as we do, that the defendant does not waive plain error review of the giving of an approved patterned jury instruction submitted by him, we are mindful of our holding in *State v. Goodwin,* 891 S.W.2d 435, 438 (Mo.App.1994), where we held that the use of an approved instruction, by definition, cannot be plain error. We cannot quibble with the logic of that case. How can the use of an approved instruction by a trial court be evident, obvious, and clear error to convict the court of plain error? To allow plain error review of the giving of an approved instruction would seem to place the trial court in a "Catch 22": Do not use the approved instruction and run the risk of being found guilty of plain error; or use it and still run the same risk. From a trial court's perspective, the "approved" label on the instruction would offer little in the way of assuring that the instruction is correct. Despite the apparent logic of *Goodwin,* holding that the giving of an

approved instruction is not subject to plain error review, *Derenzy* and *Westfall* lead to the opposite conclusion. Both require that if an instruction, affecting substantial rights, is required, it must be in proper form, otherwise it is plain error. *See State v. Goucher*, 111 S.W.3d 915, 919 (Mo.App. 2003). Inasmuch as the substantive law controls over the form of an approved MAI–CR instruction, *State v. Carson*, 941 S.W.2d 518, 520 (Mo. *banc* 1997), to be in "proper form" means that the instruction given must comport with the substantive law. Hence, we read *Derenzy* and *Westfall* for the proposition that the giving of an approved instruction does not preclude plain error review under Rule 30.20.

Having determined that the appellant did not waive plain error review of his claim in Point II, we now turn to the merits of his claim.

### B. Plain Error

In Point II, the appellant claims that the trial court plainly erred in failing to modify, *sua sponte*, his self-defense instruction, Instruction No. 11, to instruct the jury that it could consider not only the actions of the victim, but the victim's friends, in determining whether he acted in lawful self-defense in stabbing the victim, because, without such modification, MAI–CR 3d 306.06 does not correctly instruct on the law of self-defense in cases of multiple assailants, as in this case. Specifically, he claims that the paragraph of Instruction No. 11, which reads: "If the [appellant] was not the initial aggressor in the encounter with Matthew Snarr, and if the [appellant] reasonably believed he was in imminent danger of harm from the acts of Matthew Snarr and the [appellant] used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self defense," should have been modified, *sua sponte*, by the trial court to read: "If the [appellant] was not the initial aggressor in the encounter with

Matthew Snarr, and if the [appellant] reasonably believed he was in imminent danger of harm from the acts of Matthew Snarr 'and those whom the defendant reasonably believed were acting in concert with Matthew Snarr' and the [appellant] used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self defense."

In *State v. Hibler*, this court set forth the plain error standard of review for instructional error:

Giving the language in [Rule 30.20] its plain and ordinary meaning, we interpret it as providing for a two-step process in determining plain error review. Under the rule, the first step involves an examination to determine whether the claim for review facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, or in other words, whether on the face of the claim, plain error has, in fact, occurred.... Plain errors are those which are evident, obvious and clear. If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

Instructional error seldom rises to the level of plain error. To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice. In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and cause[d] manifest injustice or miscarriage of justice. The defendant bears the burden of showing that plain error

has occurred which resulted in manifest injustice or a miscarriage of justice. 21 S.W.3d 87, 96 (Mo.App.2000) (citations omitted).

Rule 28.02(c) provides: "Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes On Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." "Whenever there is evidence supporting [self] defense, [MAI–CR 3d 306.06] must be given." MAI–CR 3d 306.06, Note on Use 2. Hence, "MAI–CR 3d 306.06 is the mandatory instruction to be given when instructing on self-defense." *White*, 92 S.W.3d at 191. "The giving or failure to give an instruction or verdict form in violation of this Rule 28.02 or any applicable Notes On Use shall constitute error, the error's prejudicial effect to be judicially determined." Rule 28.02(f). Here, however, the appellant does not challenge Instruction No. 11 on the basis that it failed to comply with the mandatory self-defense approved instruction, MAI–CR 3d 306.06, and its Notes On Use. In fact, he concedes the contrary. Nonetheless, he still claims that Instruction No. 11 was erroneous because, without modification, it failed to correctly instruct the jury that, under the law of self-defense, it could consider not only the actions of the victim, but the actions of the victim's friends, in determining whether the appellant had a reasonable belief as to the need to defend himself against the unlawful force used by the victim. If the appellant is correct, that in cases of multiple assailants, MAI–CR 3d 306.06 conflicts with the substantive law of self-defense, then it should not be followed, or in other words, should be modified to comply with the substantive law. *See Carson*, 941 S.W.2d at 520 (holding: "If an instruction following MAI–CR3d conflicts with the substantive law, any court should decline to follow MAI–CR3d or its Notes on Use.").

■ Section 563.031 governs the "[u]se of force in defense of persons." Pursuant to § 563.031.4: "**The defendant shall have the burden of injecting the issue** of justification under this section." (Emphasis added.) If a term or phrase is defined in the statute, that definition controls in the application of the statute. *State v. Rousseau*, 34 S.W.3d 254, 259 (Mo.App. 2000). Section 556.061 provides, in pertinent part: "In this code, unless the context requires a different definition, the following shall apply: ... that the '[b]urden of injecting the issue' has the meaning specified in section 556.051[.]" Section 556.051 provides:

When the phrase "**The defendant shall have the burden of injecting the issue**" is used in the code, it means

(1) The issue referred to is not submitted to the trier of fact unless supported by evidence; and

(2) If the issue is submitted to the trier of fact any reasonable doubt on the issue requires a finding for the defendant on that issue.

We see nothing about the context of § 563.031.4 that would require a definition of the phrase, "injecting the issue," other than that found in § 556.051. Hence, the statutory definition of "injecting the issue," found in § 556.051 controls as to § 563.031.

■ MAI–CR 3d 306.06, Note on Use 2 provides: "The 'burden of injecting the issue' of self-defense is on the defendant." This language comports with § 563.031.4 and § 556.051. "Whenever there is evidence supporting this defense, this instruction must be given." MAI–CR 3d 306.06, Note on Use 2. In determining whether the evidence supports the giving of a self-defense instruction, the evidence has to be viewed in a light most favorable to the defendant. *Vogel v. State*, 31 S.W.3d 130, 141 (Mo.App.2000).

The Missouri Supreme Court, in *State v. Avery*, 120 S.W.3d 196, 200 (Mo. *banc* 2003), without any reference to § 563.031.4; § 556.061; § 556.051;or MAI–CR 3d 306.06, Note on Use 2, held that a self-defense instruction must be submitted "when substantial evidence is adduced to support it." (Citations omitted.) Neither § 556.051 nor MAI–CR 3d 306.06, Note on Use 2, make any reference to "substantial" evidence as being the quantum of evidence necessary to satisfy the defendant's burden to "inject the issue" of self-defense, § 563.031.4, mandating a self-defense instruction. They simply speak in terms of "evidence." However, the Court in *Avery* defined "substantial evidence," for purposes of supporting an instruction on self-defense, as "evidence putting a matter in issue." 120 S.W.3d at 200. This definition simply circles back to the definition of "injecting the issue" found in § 556.051 and the requirements of MAI–CR 3d 306.06, Note on Use 2, such that regardless of the nomenclature, the Court's stated requirement, as to the quantum of evidence necessary to support the submission of a self-defense instruction, "substantial evidence," is consistent with § 556.051 and MAI–CR 3d 306.06, Note on Use 2.

 Once the defendant carries his burden of injecting the issue of self-defense, the State has the burden to prove beyond a reasonable doubt that he did not act in lawful self-defense, and the jury must be instructed accordingly. *White*, 92 S.W.3d at 191. This instruction must be given once the issue is injected even if it is not requested. *State v. Bowman*, 869 S.W.2d 901, 903 (Mo.App.1994). Here, the trial court found that the appellant had carried his burden of injecting the issue of self-defense and, accordingly, instructed the jury on that issue in Instruction No. 11, set out, *supra*, which was patterned after MAI–CR 3d 306.06.

For the evidence to support the giving of a self-defense instruction, there necessarily has to be evidence establishing each of the elements of self-defense, which are found in § 563.031. *See* MAI–CR 3d 306.06, Note on Use 1 (§ 563.031 is the lone statutory reference for the instruction).[4] Section 563.031 reads:

1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person, unless:

 (1) The actor was the initial aggressor; except that in such case his use of force is nevertheless justifiable provided

 (a) He has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened use of unlawful force; or

 (b) He is a law enforcement officer and as such is an aggressor pursuant to section 563.046; or

 (c) The aggressor is justified under some other provisions of this chapter or other provision of law;

 (2) Under the circumstances as the actor reasonably believes them to be, the person whom he seeks to

---

4. Two other statutes deal with justification of the use of physical force, which otherwise would be considered criminal conduct. Section 563.021 applies in cases of conduct required or authorized by statute or judicial decree. Section 563.026 applies in cases of emergency or necessity.

protect would not be justified in using such protective force.

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping or serious physical injury through robbery, burglary or arson.

3. The justification afforded by this section extends to the use of physical restraint as protective force provided that the actor takes all reasonable measures to terminate the restraint as soon as it is reasonable to do so.

4. The defendant shall have the burden of injecting the issue of justification under this section.

Subsections 3 and 4 of the statute do not address the elements of self-defense. Rather, they deal with the use of physical restraint and the requirement that the defendant inject the issue into the case, respectively. Subsection 2 only applies in cases involving deadly force, and subdivision (2) of subsection 1 only applies in cases of physical force used in defense of third persons. Hence, in cases such as ours, involving self-defense using physical force, the required elements that must be shown to warrant an instruction, in accordance with § 563.031, are set out in § 563.031.1(1). Thus, in determining whether MAI–CR 3d 306.06 requires modification in cases of self-defense using physical force, involving multiple assailants, as the appellant claims in this point, we have to determine the required elements of self-defense using physical force, as set forth in § 563.031.1(1).

Statutory interpretation is purely a question of law, which we determine de novo. *Pavlica v. Dir. of Revenue,* 71 S.W.3d 186, 189 (Mo.App.2002). When interpreting a statute, we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning, and give effect to that intent, if possible. *State ex rel. Riordan v. Dierker,* 956 S.W.2d 258, 260 (Mo. banc 1997). If the intent of the legislature is clear and unambiguous, giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute. *Baxley v. Jarred,* 91 S.W.3d 192, 196 (Mo.App.2002).

We can find no cases interpreting § 563.031.1 in determining the elements of self-defense, using physical force involving multiple assailants. However, giving the language of § 563.031.1 its plain and ordinary meaning, it requires, for the defendant to be entitled to an instruction on self-defense using physical force, that there be evidence establishing that: (1) the defendant had a reasonable belief that the victim was using unlawful force against him or the use of such force was imminent; (2) the defendant had a reasonable belief that the physical force he used against the victim, in response to the use or imminent use of unlawful force by the victim, was necessary to defend himself; and (3) the defendant was not the initial aggressor, or if he was, that one or more of the three exceptions of § 563.031.1(1)(a)-(c) apply. The jury is instructed upon these elements in both the general instructions, part A, and the specific instructions, part B, of MAI–CR 3d 306.06. However, MAI–CR 3d 306.06 does not track the language of § 563.031.1 with respect to the defendant's defending against what he "reasonably believes to be the use or imminent use of unlawful force."

MAI–CR 3d 306.06, rather than speaking in terms of the defendant defending himself against what he "reasonably believes to be the use or imminent use of

unlawful force," speaks in terms of the defendant defending himself against what he reasonably believes to be an "imminent danger of harm." For example, in part A[2], where physical force is used, as opposed to deadly force, MAI–CR 3d 306.06 mandates the jury to be instructed that: "In order for a person lawfully to use force in self-defense, he must reasonably believe he is in *imminent danger of harm* from the other person." Similarly, in part B[2], MAI–CR 3d 306.06 mandates that the jury be instructed that: "(If) the defendant reasonably believed he was in *imminent danger of harm* from the acts of [*name of victim*] and the defendant used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense." Thus, while § 563.031.1 clearly mandates that the reasonableness of the defendant's belief concerning the degree of physical force necessary to defend himself against the victim be based on a reasonable belief concerning the "use or imminent use of unlawful force" by the victim, MAI–CR 3d 306.06 mandates that it be predicated on his reasonable belief concerning an "imminent danger of harm from the acts of [victim]." These two concepts, "unlawful force" versus "imminent danger of harm," are distinct in that the former deals with the victim's acts, while the latter deals with the resulting harm from those acts.

Section 563.031 was enacted in 1978 as part of Missouri's penal code and became effective on January 1, 1979. Prior to its enactment, the only codification of when a person was justified in using force against another was the "justifiable homicide" statute, § 559.040, RSMo 1969. It provided that homicide was justifiable in the following cases:

(1) In resisting any attempt to murder such person, or to commit any felony upon him or her, or in any dwelling house in which such person shall be; or

(2) When committed in the lawful defense of such person, or of his or her husband or wife, parent, child, brother, sister, uncle, aunt, nephew, niece, master, mistress, apprentice or servant, when there shall be reasonable cause to apprehend a design to commit a felony, or to do some great personal injury, and there shall be reasonable cause to apprehend immediate danger of such design being accomplished; or

(3) When necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot or insurrection, or in lawfully keeping or preserving the peace.

MAI–CR 2.40 (10–31–73) was the mandatory instruction used to instruct on justifiable homicide. And, while there was no statute governing self-defense or defense of others in assault cases, MAI–CR 2.40, Note on Use 2, provided that "with slight alteration MAI–CR 2.40 should be adapted and used in *assault* cases where applicable under the law and the evidence," recognizing that there was "no material difference in law between homicide and assault cases as to whether force (whether deadly or not) was justifiable so as to require acquittal," citing *State v. Spencer*, 307 S.W.2d 440, 443 (Mo.1957). MAI–CR 2.40 read, in pertinent part:

One of the issues in this case is whether the death of [*name of victim*] was a justifiable homicide. By 'justifiable homicide' is meant the killing of another in lawful self-defense. On that issue you are instructed as follows:

1. The State has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the evidence in this case leaves in your mind a reasonable

doubt as to whether the defendant acted in lawful self-defense, then you must find the defendant not guilty.

2. (If the defendant did not provoke the use or threat of force against himself, and if) (If) the defendant had reasonable cause to believe and did believe that he was in immediate danger of death or serious bodily harm and had reasonable cause to believe and did believe that it was necessary for him to act as he did to protect himself from such danger; then you are instructed that he acted in lawful self-defense and must be acquitted. . . .

Hence, like § 559.040, MAI–CR 2.40 spoke in terms of an "immediate danger of harm."

At the same time § 563.031 became effective, January 1, 1979, MAI–CR 2d 2.41.1 (1–1–79) became the mandatory patterned instruction for self-defense in assault cases, using physical force. And, just like § 563.031, it spoke in terms of "unlawful force," reading: "(If) the defendant reasonably believed it was necessary to use such physical force as he used in order to protect himself from what he reasonably believed to be the (use) (imminent use) of unlawful force by [*name of victim*], then the defendant acted in lawful self-defense and must be acquitted." MAI–CR 2d 2.41.1[1]. Although the "unlawful force" language of § 563.031 has not been amended since the statute's enactment in 1979, the present version of MAI–CR 3d 306.06, which is a revision of MAI–CR 3d 306.06 (9–1–99), which was a revision of MAI–CR 3d 306.06 (9–1990), which was a revision of MAI–CR 3d 306.06 (1–1–87), abandoned the statutory language of "unlawful force" that was used in MAI–CR 2d 2.41.1, without any indication in the Notes on Use of MAI–CR 3d 306.06 as to why that was done.

■ We know of no case that found fault with MAI–CR 2d 2.41.1, mandating that the approved MAI–CR ignore the "unlawful force" language of § 563.031 in favor of the imminent-danger-of-harm language, and we cannot discern any legal reason for doing so. We would note that unlike § 563.031.1, dealing with the use of physical force, § 563.031.2, dealing with deadly force, does speak in terms of resulting harm or injury. It reads:

A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping or serious physical injury through robbery, burglary or arson.

§ 563.031.2. However, we note that MAI–CR 2d 2.41.1.2[3] handled that by instructing: "(If) the defendant reasonably believed it was necessary to use deadly force to protect himself against what he reasonably believed to be the (use) (imminent use) of unlawful force putting himself in an imminent danger of (death) (or) (serious physical injury) (or) (rape) (or) (sodomy) (or) (kidnapping) at the hands of [*name of victim*], then the defendant acted in lawful self-defense and must be acquitted[,]" in cases of deadly force. This is a correct statement of the law, reading § 563.031.1 and § 563.031.2 together. Hence, we believe that to correctly instruct the law of self-defense, MAI–CR 3d 306.06 should be revised to drop the "imminent danger of harm" language presently used, in favor of the "unlawful force" language of § 563.031, much as MAI–CR 2d 2.41.1 (1–1–79) did in paragraph 2[1], which reads, in pertinent part:

(If the defendant was not the initial aggressor in the encounter with [*name of victim*] and if) (If) the defendant

reasonably believed it was necessary to use such physical force as he used in order to protect himself from what he reasonably believed to be the (use) (imminent use) of unlawful force by [*name of victim*], then the defendant acted in lawful self-defense and must be acquitted.

While we believe that MAI–CR 3d 306.06 is not a correct statement of the law of self-defense, to the extent it requires the jury to deliberate on whether the defendant acted justifiably in using force against another person because he had a reasonable belief that he was in "imminent danger of harm," rather than he had a reasonable belief that such other person was using or was about to use "unlawful force" against him, we cannot say that the use of the "imminent danger of harm" language in Instruction No. 11 resulted in manifest injustice or a miscarriage of justice to the appellant, warranting plain error relief under Rule 30.20. This is so in that it is not readily apparent to us that Instruction No. 11, in instructing the jury to deliberate on whether the appellant had a reasonable belief that he was in "imminent danger of harm" from the victim, rather than instructing it on whether he had a reasonable belief as to the "use or imminent use of unlawful force" by the victim, so confused the jury that it failed to properly consider the appellant's claim of self-defense such that if Instruction No. 11 contained the unlawful-force language, rather than the imminent-danger-of-harm language, there would have been a different outcome in the appellant's case. In other words, that if Instruction No. 11 had contained the unlawful-force language, rather than the imminent-danger-of-harm language, the jury would have found that the appellant was acting in lawful self-defense in stabbing the victim.

In convicting the appellant, the jury necessarily rejected his claim of self-defense. However, we do not know on what basis. Regardless, it does not appear that the failure of Instruction No. 11 to use the unlawful-force language of § 563.031 had any bearing on the rejection of the appellant's claim of self-defense. The victim testified that the appellant was the initial aggressor, while the appellant testified that the victim was the initial aggressor. If the jury believed the victim's testimony in that regard, that alone would have been a sufficient basis for rejecting the appellant's claim of self-defense. And, if that were the case, then it mattered not in the jury's rejection of the appellant's claim of self-defense whether Instruction No. 11 employed the unlawful-force language of § 563.031, rather than the imminent-danger-of-harm language of MAI–CR 3d 306.06.

Even assuming, *arguendo*, that the jury believed the appellant's testimony that the victim was the initial aggressor, it still could have rejected the appellant's self-defense claim on the basis that he did not have a reasonable belief that his stabbing the victim six times with a knife was necessary to defend against the victim's grabbing him from behind. In other words, even if the jury believed that the victim was the initial aggressor, the decisive issue, in determining whether the appellant acted in lawful self-defense, did not revolve around whether he had a reasonable belief as to the victim's use of "unlawful force," but whether he had a reasonable belief that his acts of stabbing the victim were necessary to defend himself against the victim. And, once again, if that were the case, then it mattered not to the jury's rejection of the appellant's claim of self-defense whether Instruction No. 11 employed the unlawful-force language of § 563.031, rather than the imminent-danger-of-harm language of MAI–CR 3d 306.06.

Because we find that the failure of Instruction No. 11 to instruct the jury on the appellant's defending against the "use or imminent use of unlawful force" by the victim, as required by § 563.031, rather than defending against an "imminent danger of harm from the acts of the victim," as required by MAI–CR 3d 306.06, did not have any bearing on the jury's denying the appellant's claim of self-defense, we deny plain error relief on that basis. And, having done so, we now move to the plain error specifically raised by the appellant as to Instruction No. 11.

 The appellant claims in this point that the trial court should have modified, *sua sponte,* Instruction No. 11, by adding language to the paragraph of part B[A] of MAI–CR 3d 306.06 so that the jury would have been instructed that it could find that he acted in "lawful self-defense" in stabbing the victim, if it found that the defendant "reasonably believed that he was in imminent danger of harm from the acts of Matthew Snarr *and those whom the defendant reasonably believed were acting in concert with Matthew Snarr* and the defendant used only such force as reasonably appeared to be necessary to defend himself[.]" In response, the State argues:

But the plain language of the pattern instruction refutes [the appellant's] argument. The instruction allows the jury to consider whether a defendant 'reasonably believe[s] he is in imminent danger of harm from the other person.' MAI–Cr3d 306.06, Part A[2]. 'Reasonable belief,' in turn, is defined as a 'belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This is upon how the facts reasonably appeared.'

The instruction talks about a reasonable person in the 'same situation.' Use of the word 'situation' connotes something more than the mere actions of the victim. Under this definition the jury was not restricted to consider only the victim's actions, but was permitted to consider the actions of all persons and the totality of the circumstances in determining whether Appellant had a reasonable belief of imminent danger.

In other words, the State concedes that under the law of self-defense and the evidence in this case, the jury should have been allowed to consider the actions of the victim's friends in determining if the appellant acted in lawful self-defense by stabbing the victim, but contends that Instruction No. 11, patterned after MAI–CR 3d 306.06, permitted the jury to do just that so that the appellant's claim in Point II is without merit.

The appellant claims that paragraph 5 of Instruction No. 11, patterned after MAI–CR 3d 306.06, should have been modified by the trial court, *sua sponte,* to read:

If the [appellant] was not the initial aggressor in the encounter with Matthew Snarr, and if the [appellant] reasonably believed he was in imminent danger of harm from the acts of Matthew Snarr <u>and those whom the defendant reasonably believed were acting in concert with Matthew Snarr</u> and the [appellant] used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self defense.

In claiming that Instruction No. 11 should have been modified in this fashion, the appellant is essentially claiming that, under the law and facts of this case, the jury, in considering whether he "used only such force as reasonably appeared to be necessary to defend himself," should have been instructed expressly that it was allowed to consider not only the imminent danger of harm presented by the acts of the victim, but the acts of his friends. He claims that the instruction, as given, confused the jury

by misleading it into believing that in determining whether he believed he was in "imminent danger of harm," an essential element in the instruction to find that he acted in lawful self-defense, it could only consider the acts of the victim, which precluded its consideration of the acts of the victim's friends, which, he contends was a relevant consideration under the law of self-defense in cases of multiple assailants.

■■■ Section 563.031.1, governing self-defense using physical force, reads, in pertinent part: "A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person.... " Giving this language its plain and ordinary meaning, it is clear that the legislature intended that the victim, the person against whom the defendant uses physical force—"another person," must be the same person against whose unlawful acts of force the defendant is defending— "such other person." This is so in that the qualifying term, "such," directs us back to the "another person" or victim. "Such" is defined in the dictionary as "the person or thing mentioned or implied." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1337 (3rd ed.1997). Hence, the self-defense instruction must refer to the unlawful acts of force of the victim against the defendant as the justification for the defendant's using physical force against the victim. *State v. Howard,* 896 S.W.2d 471, 481 (Mo.App.1995). In other words, the instruction cannot hypothesize self-defense with respect to the use of physical force against the victim as a response by the defendant to the unlawful acts of force of a third person. However, while it is clear that § 563.031.1 limits the use of physical force against the victim by the defendant to a response to the use or imminent use of unlawful force by the victim and the victim alone, the "extent" to which the defendant may respond with physical force is not so limited.

In defending against the unlawful acts of force of the victim, the defendant is necessarily and logically trying to avoid resulting harm or injury. And, in fact, this is the bedrock upon which self-defense is based in this state—that a person should be allowed to use reasonable and necessary force against another to protect against harm or injury. *See In the Interest of J—— M——,* 812 S.W.2d 925, 932 (Mo.App.1991). In that vein, as we noted, *supra,* § 563.031.2, dealing with a defendant's using deadly force, speaks expressly in terms of avoiding death or serious physical injury. Likewise, § 563.026, governing the justification of using physical force in cases of emergency and necessity, speaks in terms of avoiding injury. And, although § 563.031.1 does not speak expressly in terms of avoiding injury, we believe that is inherent in self-defense such that in determining the reasonableness of the defendant's response to the unlawful acts of force of the victim, the fact finder can consider the harm or injury that the defendant reasonably believed he was avoiding in using physical force against the victim.

Given our interpretation of § 563.031.1, Instruction No. 11, to conform therewith, had to instruct the jury to consider whether the appellant, in stabbing the victim, had a reasonable belief that: (1) the victim was using unlawful force by grabbing him from behind; and (2) such use of physical force by the appellant against the victim, in response thereto, was necessary to defend himself. However, as we discuss, *supra,* the determination of the reasonableness of the appellant's response to the victim's alleged unlawful use of force against him depends, in part, on the harm

or injury that the appellant reasonably believed he was avoiding by using physical force against the victim. Hence, if Instruction No. 11 prohibited the jury's consideration of this issue, as the appellant claims, that would be error. However, as noted, *supra,* the State contends that Instruction No. 11 not only did not prohibit the jury's consideration of the issue in question, but properly instructed it to consider it.

In our case, the appellant is contending that in using physical force against the victim, specifically, stabbing him, which he contends was in response to the victim's unlawful force of grabbing him from behind, he was trying to avoid the harm and injury that would result from not only the acts of the victim, but the acts of the victim's friends. In that regard, he testified that it was necessary for him to stab the victim because he believed: (1) it was his only means of escaping the victim's hold; and (2) the victim's friends were approaching with the intent to assault him with the weapons they were brandishing. Accordingly, he argues that the jury should have been instructed in Instruction No. 11 that, in considering whether he had a reasonable belief that stabbing the victim was necessary to defend against the alleged unlawful act of the victim, grabbing him from behind, to avoid what he reasonably believed was imminent harm or injury, that it could consider the acts of the victim's friends. The State concedes this proposition, but argues that Instruction No. 11 did just that.

In requiring the defendant to have a reasonable belief concerning the use or imminent use of unlawful force by the victim to rely on self-defense, § 563.031.1 does not require proof that the victim's acts of force were actually unlawful, but only proof that the defendant "reasonably believed" that they were unlawful.[5] Likewise, in requiring the defendant to have a reasonable belief concerning the necessity of his actions to defend against the unlawful force of the victim to avoid harm or injury, § 563.031 does not require proof that the defendant's actions were actually necessary, but only that he reasonably believed that they were necessary. A "reasonable belief" is required to be defined in every self-defense instruction as follows:

As used in this instruction, the term 'reasonable belief' means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend on whether the belief turned out to be true or false.

MAI–CR 3d 306.06, Note on Use 4(d). Instruction No. 11 included this definition. The State contends from this that:

The instruction talks about a reasonable person in the 'same situation.' Use of the word 'situation' connotes something more than the mere actions of the victim. Under this definition the jury was not restricted to consider only the victim's actions, but was permitted to consider the actions of all persons and the totality of the circumstances in determining whether Appellant had a reasonable belief of imminent danger.

We would agree with the State's contention that the inclusion of the mandatory definition of "reasonable belief" in Instruction No. 11 would seem to instruct the jury that it could consider the "situation" or the totality of the circumstances in determining whether the appellant, in stabbing the victim, acted out of necessity in defending

---

**5.** The lawfulness of the victim's act should not be confused with the purpose of the self-defense instruction, to determine the lawfulness of the defendant's acts in response thereto.

himself from harm or injury, which circumstances would include the acts of the victim's friends. The problem with the State's contention, however, is that Instruction No. 11 states, in pertinent part: "If the defendant was not the initial aggressor in the encounter with [the victim], and the [appellant] reasonably believed he was in imminent danger of harm from the acts of [the victim] and the [appellant] used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense." It is reasonable to conclude from this that the jury believed that in considering whether the appellant acted in lawful self-defense in stabbing the victim, it could only consider the acts of the victim.

Some argument could be made for the fact the "acts of [the victim]" language of the instruction only applied to the jury's determination of the issue of "imminent danger of harm," which as we discussed, *supra*, was substituted for the "unlawful force" determination, required by § 563.031.1, and not to its determination of the appellant's belief as to the necessity of his response to the victim's alleged unlawful acts to avoid harm or injury. This then would leave room to argue, as the State does, that Instruction No. 11 instructed the jury that in determining the reasonableness of the appellant's belief as to the necessity for stabbing the victim, in order to avoid harm or injury, it could consider the totality of the circumstances, which would include the acts of the victim's friends. It is unreasonable, however, to suggest that the jury could have made this fine of a distinction, especially given the State's closing argument, which the appellant challenges in Point I, as being contrary to the law of self-defense, given the evidence of multiple assailants.

In its closing argument, the State argued: "I would suggest you read the Court's instruction to you on self-defense. It only relates to what Matthew Snarr did, not what anybody else—what the defendant claims somebody else did." This argument, coupled with Instruction No. 11, would have undoubtedly led the jury to believe, contrary to the law, that it could not consider the acts of the victim's friends, in any manner, in deliberating on whether he acted in lawful self-defense in stabbing the victim in response to the victim's grabbing him from behind. Thus, there can be no doubt that the jury was confused as to an element of the State's proof, albeit in the negative. In that regard, as we noted, *supra*, once the trial court determined that the appellant had carried his burden of injecting the issue of self-defense in the case, it was the State's burden to prove, beyond a reasonable doubt, that the appellant did not act in lawful self-defense. *White*, 92 S.W.3d at 191. Hence, Instruction No. 11, in essence, erroneously instructed on a proof element of the State's case, albeit in the negative.

Having determined that Instruction No. 11 was erroneous, the question remains as to whether the error rose to the level of plain error. As we discussed, *supra*, instructional error is rarely found to result in manifest injustice or a miscarriage of justice, requiring reversal for plain error. However, as we noted in *State v. White*, 92 S.W.3d at 192:

In the context of instructional error, reversible plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict. In that regard:

an appellate court will be more inclined to reverse in cases where the erroneous instruction 'did not merely allow a wrong word or some other ambiguity to exist, but excused the

State from its burden of proof on a contested element of the crime.'

(Citations omitted.) Here, the error in Instruction No. 11 effectively gave the State a pass on proving the negative of a contested element of the offense charged, that the appellant did not act in lawful self-defense when he stabbed the victim, such that plain error occurred.

A further basis for finding plain error here can be found in *State v. Goucher*, in which the Southern District of this court held that: "In *Derenzy*, the defendant met his burden of showing plain error by simply demonstrating that the trial court failed to give a mandatory instruction that possibly affected substantial rights." 111 S.W.3d at 919. As we discussed, *supra*, the giving of the self-defense instruction in proper form in this case was mandatory. Instruction No. 11, given its deficiencies, was not in proper form.

Having found instructional plain error in Point II, the appellant is entitled to a reversal of his conviction for second-degree assault and a new trial. *State v. Smith*, 154 S.W.3d 461, 471 (Mo.App.2005). On remand, however, he cannot be re-tried for first-degree assault in that he was acquitted by the jury of that offense when it found him guilty of the lesser-included offense of second-degree assault. *State v. Weekley*, 967 S.W.2d 190, 193–94 (Mo.App. 1998). Further, in ruling as we do as to Point II, the appellant's claim in Point I, in which he sought a new trial, and his claim in Point III, in which he sought to be resentenced for the class A misdemeanor of assault in the second degree, are rendered moot.

## Conclusion

The judgment of the appellant's conviction for assault in the second degree, § 565.060, is reversed and the case is remanded for further proceedings in accordance with this opinion.

SPINDEN and HOLLIGER, JJ., concur.